[Crim. No. 9500. Third Dist. Oct. 24, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY LYNN QUAINTANCE, Defendant and Appellant.

## Counsel

Ronald K. Vanesian for Defendant and Appellant.

Evelle J. Younger, Attorney General, and Lisa Lewis Dubois, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**PUGLIA, P. J.**—Defendant appeals from the judgment following a jury conviction upon two counts of grand theft (Pen. Code, § 487, subd. (1)) arising from the midnight appropriation of an almond sweeper and a trailer each of which were stipulated to have a value in excess of $200. Defendant's contentions on appeal all center around the trial court's admission into evidence of testimony given at the preliminary hearing by Frank Bondietti, an accomplice who had been tried and convicted for the same offenses prior to defendant's trial.

When called as a witness at defendant's trial, Bondietti refused to answer questions, alleging that he had seen "seven deaths" while in the state prison facility in Vacaville, and he feared he would meet the same fate if he allowed a "snitch jacket" to be placed on him by giving testimony.[1] On appeal defendant contends the trial court erred in admitting Bondietti's preliminary hearing testimony for impeachment

---

[1] The record indicates Bondietti was confined at the California Medical Facility in Vacaville, "undergoing processing" from March 31, 1977, through May 11, 1977. Bondietti testified he had spent one and one-half months at that facility, but was at the time of trial (May 18, 1977) being held in the Butte County jail. His intended destination following the trial is not shown in the record.

purposes as prior inconsistent statements; in declaring Bondietti unavailable as a witness; in not excluding Bondietti's prior testimony under Evidence Code section 352; in not granting a mistrial based on Bondietti's demeanor while on the witness stand; and in not granting a new trial when, after his conviction, defendant produced a letter from the Department of Corrections stating that only one homicide had occurred during Bondietti's stay at the California Medical Facility in Vacaville.

We conclude that the foregoing claims of error do not warrant reversal.

At approximately 11 p.m. on January 17, 1977, Butte County Sheriff's Deputy Albert saw a 1964 Chevrolet pickup truck towing a trailer hauling an almond sweeper pull onto the street from the driveway of the Weiss Manufacturing Company in Chico. The trailer had no taillights. Before the officer could stop the vehicle, it pulled to the side of the road. Frank Bondietti, the driver, got out and approached Deputy Albert. Defendant, the vehicle's passenger, got out and walked away. Bondietti was arrested for grand theft of the almond sweeper and the trailer.

On January 19, 1977, defendant came voluntarily to the Chico police station and told Officer Thinker that he had heard the police were looking for him and he wished to know the reason. Thinker told defendant he had been identified as Bondietti's passenger, and advised defendant of his rights. Defendant gave a statement in which he admitted assisting Bondietti in the removal of the trailer and almond sweeper from the owner's premises but denied knowledge that they were being taken unlawfully.

Defendant's testimony at trial varied somewhat from his statement to Officer Thinker. Defendant testified Bondietti asked his help in picking up a tractor and trailer for an unnamed friend, whom defendant assumed to be a Mr. Wolf. The two of them drove to the Weiss Manufacturing Company premises, loaded a "tractor" on the trailer, hooked the trailer up to the truck, and drove out the driveway. Although he had been given no indication that the machinery was being taken other than with the owner's consent, defendant became suspicious when Bondietti turned onto the road in a direction away from the Wolf residence. When the truck pulled over in front of the police car Bondietti told defendant to "get out . . . and . . . split," and he followed his directions. Defendant walked to a nearby gas station where he got a ride to a restaurant with a friend. He ultimately spent the night sleeping in a car in Mr. Wolf's back yard rather than going to his own apartment. He hid from the police the

following day and went to the police station two days after the incident because he was weary of hiding.

Frank Bondietti was called by the prosecution as a witness in its case-in-chief. In answer to the prosecutor's first question, the witness indicated he would answer no questions because while confined in state prison he had seen persons killed for testifying against other criminal defendants, and he consequently feared for his life. The trial court granted defendant's motion to strike Bondietti's remarks, admonished the jury to disregard the statements, and excused the jury while the matter was explored further.

Out of the presence of the jury, Bondietti testified that while confined in state prison for one and one-half months before the trial he had seen "seven people fall in front of [him]" for testifying, and consequently he would not testify at all in fear for his life. The court made a finding that Bondietti was a witness hostile to the prosecution and could therefore be examined by the use of leading questions. The court further declared that it would permit impeachment with preliminary hearing testimony and indicated it would declare Bondietti "unavailable" only as to those matters about which he declined to testify. This "piecemeal" approach to the unavailability question appears to have been an attempt to accommodate defendant's adamant insistence that Bondietti *not* be declared "unavailable."

The jurors were returned to the courtroom. Bondietti reiterated his refusal to answer any questions due to fear for his life. He was declared a witness hostile to the prosecution, held in contempt of court, and "found to be unavailable because of an apparent bona fide fear relative to his life." Over defense objection, the prosecutor then read into the record Bondietti's prior testimony wherein the witness had stated that defendant was the originator of the unlawful scheme, and had suggested to Bondietti that they steal the almond sweeper so defendant could sell it in order to pay his rent.

On cross-examination Bondietti continued to refuse to answer questions about the incident, on the basis of the alleged fear for his life. When the inquiry shifted to questions concerning his former testimony, Bondietti declined to answer on the basis of his Fifth Amendment privilege lest he expose himself to a charge of perjury arising out of his former testimony. On redirect examination however, the witness alternately invoked his Fifth Amendment privilege, answered that he did not

remember giving certain testimony, and conceded that he had given certain other answers to questions asked of him at the preliminary hearing. A defense motion for mistrial based on Bondietti's behavior was denied.

Defendant was found guilty of both counts charged. His motion for new trial on the basis of newly discovered evidence was denied. On August 19, 1977, a three-year probationary term was imposed conditioned on payment of a fine and service of one year in county jail.

## I

■ Defendant's contention that the court erred in admitting Bondietti's preliminary hearing testimony as prior statements inconsistent with his trial testimony (Evid. Code, §§ 1235, 770) may be quickly disposed of. Although admission of the prior testimony on this basis was discussed at trial, it is plain that the testimony ultimately was admitted not as prior inconsistent statements but under the unavailability rule set out in Evidence Code section 240, subdivision (a)(3).

## II

■ Also without merit is defendant's claim that the trial court erred by failing to invoke the provisions of Evidence Code section 352, and to exclude Bondietti's prior testimony as more prejudicial than probative because the jury had heard him protest that he feared for his life in the event he testified. Defendant urges that Bondietti's expression of fear must have cloaked his preliminary hearing testimony with an aura of unmerited credibility since "[A]n honest witness is the only one who would have to fear reprisals in prison because only people guilty of crimes are in prison and they are there because someone testified against them."

Evidence Code section 352 permits the court *in its discretion* to exclude evidence if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice. It is axiomatic that before a trial court may be found to have *abused* its discretion in failing to exclude otherwise admissible evidence, the record must affirmatively show that the court was requested to *exercise* its discretion in the first instance. The record shows no objection or motion made on these grounds by defendant at any time during the trial. Thus he may not raise the issue on appeal.

Moreover, even if this contention had been preserved for appeal, it would fail. There was never any attempt to contend that Bondietti's alleged fear for his life grew out of any acts or words attributable to defendant. Absent any suggestion that defendant was in some manner responsible for Bondietti's fear, it is difficult to perceive the prejudice of which defendant complains.

### III

■ Defendant claims the trial court erred in declaring Bondietti unavailable as a witness, because Bondietti did not testify he had received any direct threats on his life or safety, but merely testified that he had seen other people harmed and feared the same fate would befall him if he gave testimony in defendant's trial. This, defendant urges, was not a sufficient basis for a finding of unavailability within the rule of *People* v. *Rojas* (1975) 15 Cal.3d 540 [125 Cal.Rptr. 357, 542 P.2d 229].

It is true that the unwilling witness in *Rojas* testified that he had received threats by letter and telephone, and that assorted acts of vandalism and violence had been directed toward his family members and himself. (15 Cal.3d at p. 547.) In passing, the Supreme Court noted that no challenge had been made to the sufficiency of the evidence to support the trial court's finding that the witness feared for his safety and stated, "The record amply demonstrates that [the witness] harbored a fear that if he testified his safety and that of his family would be endangered." (*Id.,* at p. 550.) But the significant issue in *Rojas* was not the question of the quantum or type of coercion required to uphold a witness' claim of fear; instead, *Rojas* directs that inquiry be made as to whether the witness suffers the "mental infirmity" (Evid. Code, § 240, subd. (a)(3)) of "a mental state induced by fear which impels the witness to refuse to testify." (15 Cal.3d at p. 550.) It was within the province of the trial court as trier of this preliminary fact to assess the credibility of the witness, and that court indicated on at least five different occasions that it elected to believe Bondietti's assertions that he feared for his life. No evidence was presented to contradict Bondietti's claim, nor is the substance of what he averred so inherently incredible as to be unworthy of belief. On this record we are unable to say the trial court lacked a sufficient evidentiary basis for its finding that Bondietti harbored a genuine fear for his life if he testified in defendant's trial. It follows that the witness was properly declared "unavailable" within the scope of Evidence Code section 240, subdivision (a)(3), as that provision has been construed in *People* v. *Rojas, supra,* 15 Cal.3d 540.

## IV

After several witnesses following Bondietti had testified, defendant sought a mistrial on the basis that Bondietti's behavior on the witness stand had irreparably prejudiced him by creating a possible inference that Bondietti was trying to protect defendant by refusing to testify. The motion was denied. On appeal defendant urges the trial court erred in denying the motion for mistrial.

Defendant's argument is in substance a claim that because evidence harmful to his case was introduced at trial, the court should have declared a mistrial. Since, as we have discussed above, the evidence was properly admitted, no basis for a mistrial existed. The trial court ruled correctly.

## V

■ Defendant finally urges that his postconviction motion for new trial was erroneously denied. The motion for new trial was made on the basis of newly discovered evidence. (Pen. Code, § 1181, subd. 8.) In support of the motion counsel averred that on May 19, one day after Bondietti had appeared and the defense had rested its case, he first learned there had been only one homicide at the California Medical Facility while Bondietti was there, and counsel was unable to procure written verification of this fact until approximately one week later. He urged that had this fact been known when Bondietti first took the witness stand on May 18, the witness could not have been declared unavailable and the course of the trial would have been materially altered. The motion was heard and denied by the trial judge.

The record indicates that Bondietti's "seven deaths" testimony on May 18, and his refusal to testify further, were not expected by the People, who had called him as their witness; it is thus inferable that defense counsel was also surprised. Therefore, we shall assume for present purposes that the evidence on which counsel sought to obtain a new trial could not, with due diligence, have been produced at trial.

Defendant's supporting exhibit (not in affidavit form as required by statute) was a letter from the Department of Corrections stating hearsay information that three inmate deaths had occurred at the California Medical Facility during the term of Bondietti's incarceration there; one of the deaths was a homicide (a stabbing) and the other two were suicides. The trial court was thus informed of circumstances which, if

proved, would bear upon two relevant issues at trial. First, concerning the genuineness of his claimed fear, Bondietti could only have seen one inmate death attributable to "snitching," plus two others which he might mistakenly have ascribed to that cause. Second, concerning his general credibility, Bondietti could only have seen one, two, or three inmate deaths while at the Medical Facility, rather than seven, as he claimed.

The grant or denial of a motion for new trial is a matter within the sound discretion of the trial court whose ruling will be disturbed on appeal only when an abuse of discretion is clearly shown. (*People* v. *Love* (1959) 51 Cal.2d 751, 755 [336 P.2d 169]; *People* v. *Clauson* (1969) 275 Cal.App.2d 699, 704 [80 Cal.Rptr. 475]; *People* v. *Newlan* (1959) 173 Cal.App.2d 579, 583 [343 P.2d 618].) As regards the first of the issues to which the newly discovered evidence would be relevant, we are unable to say that the trial court abused its discretion when it impliedly found that proof that "only" one homicide had occurred, rather than the claimed seven, was not necessarily inconsistent with Bondietti's claim that he genuinely feared for his life if he "snitched" while in prison. As to the effect of the newly discovered evidence might have had on the jury's estimation of Bondietti's credibility, that was a collateral matter only and in that sense the evidence was cumulative. ▉ Mere cumulative evidence is not a sufficient basis on which to grant a new trial under Penal Code section 1181, subdivision 8. (*People* v. *Trujillo* (1977) 67 Cal.App.3d 547, 556 [136 Cal.Rptr. 672].) Moreover, by his performance on the witness stand Bondietti had already provided the jurors with ample basis on which they could conclude he was a less than candid witness. We find no abuse of discretion by the trial court.

The judgment is affirmed.

Regan, J., and Carr, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.