[Crim. No. 23711. First Dist., Div. Four. Jan. 24, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
REED WYANT SMITH, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Elaine L. Sierra and Michael Pescetta, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Herbert F. Wilkinson and Michael Buzzell, Deputy Attorneys General for Plaintiff and Respondent.

OPINION

PANELLI, J.—Reed Wyant Smith appeals from a judgment of imprisonment after a jury found him guilty of assault with a deadly weapon on a peace officer (Pen. Code, § 245, subd. (b)). He asserts Beagle[1] error, error in admitting evidence of his extrajudicial statement, insufficiency of the evidence, and instructional error. We conclude that the foregoing claims of error are without merit and affirm.

On September 7, 1980, Deputy Sheriff Don Stanley was on patrol in the area of Lake Berryessa. As he approached Knoxville Road, he observed two young men on the Pope Creek Bridge. One of them, later determined to be appellant, was standing on the outside of the guard rail. A sign on the bridge prohibits diving or jumping. Stanley drove to the bridge. Remaining in his vehicle, he told appellant to get back on the roadway. Appellant looked at the officer, then turned and jumped off the bridge into the water below. Stanley watched appellant swim to shore and get out of the water. He then drove to the nearby parking lot where he met appellant, who was standing next to a pickup truck with his companion on the bridge, Kevin Reid.

Stanley asked appellant for his identification. In response, appellant asked, "What the fuck for?" Stanley informed him that he wanted to issue him a citation for jumping off the bridge. After some further discussion, during which appellant again stated, "What the fuck for?" appellant opened his truck and produced a California driver's license.

Stanley returned to his patrol vehicle to get his citation book. As he was writing the citation, he noticed appellant walking toward him. When appellant was approximately six feet away, the officer noticed a knife protruding from appellant's right rear pocket. As Stanley watched, appellant drew the knife from his pocket and partially extended his arm toward Stanley. Stanley dropped his ticket book and drew his revolver. He ordered appellant to drop

---

[1] People v. Beagle (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].

the knife. The knife point was then no more than 36 inches away from Stanley. Appellant complied.

Stanley took appellant into custody and drove him to a location where he was met by Deputy Sheriff Douglas Koford. Koford testified that as he was driving appellant away from the area, appellant stated: "If that fucking pig wouldn't have pulled his gun, I would have done him in."

## I. *The Beagle issue*

Appellant and Kevin Reid had been convicted of murder. (Pen. Code, § 187.) The trial court granted appellant's *Beagle* motion to exclude the conviction as impeachment evidence against him. As to Kevin Reid, the court indicated that the felony could be used to impeach him if he should testify. Neither appellant nor Reid testified. Appellant contends that the court's ruling as to Reid was prejudicial error. We disagree.

The discussion concerning the admissibility of the felony convictions took place between the court and counsel off the record. The court then went on the record. With respect to appellant, the court weighed the *Beagle* factors and ruled that his prior murder conviction could not be used for impeachment. However, following this ruling, as to the witness Reid, the record discloses the following colloquy:

"MR. WAGNER [Defendant's counsel]: I believe, your Honor reached a contrary conclusion as to the witness Kevin Reed [sic]?

"THE COURT: Yes. There is a witness that is intended to be called on behalf of defendant in this case. He also has a conviction of a felony. The Court has ruled in this matter that if he does testify he may be asked, for impeachment purposes, if he's been convicted of a felony . . . ." Respondent argues that the foregoing is not an adequate record to review this claim, i.e., that the record fails to show that appellant made a *Beagle* motion with respect to Reid's conviction. Without question the record could have been clearer. However, the clear import of the discussion regarding admissibility of the murder convictions of appellant and Reid is that a *Beagle* motion had been made as to both. Moreover, the clerk's transcript states that the court ordered appellant's "*Beagle* motion as to a certain witness be denied." This court is therefore satisfied that a *Beagle* motion as to Reid was in fact made and ruled upon.

On motion of a defendant to exclude evidence of his prior felony conviction for impeachment purposes, the trial court has a duty (1) to determine the probative value of the prior conviction on the issue of the de-

fendant's credibility as a witness, (2) to apprise the degree of prejudice the defendant would suffer from admission of the evidence, and (3) to weigh the foregoing two factors against each other and exclude the evidence " 'if its probative value [on the issue of credibility] is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, . . .' (Evid. Code, § 352)." (*People* v. *Rollo* (1977) 20 Cal.3d 109, 116 [141 Cal.Rptr. 177, 569 P.2d 771]; see *People* v. *Beagle, supra,* 6 Cal.3d at p. 453; *People* v. *Rist* (1976) 16 Cal.3d 211, 218-219 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Fries* (1979) 24 Cal.3d 222, 226-227 [155 Cal.Rptr. 194, 594 P.2d 19].) ■ The balancing process required by Evidence Code section 352 and the *Beagle* line of decisions applies to all witnesses, not just criminal defendants. (*People* v. *Woodard* (1979) 23 Cal.3d 329, 337-338 [152 Cal.Rptr. 536, 590 P.2d 391].) Hence, in this case, the trial court had the duty to weigh the probative value of Reid's conviction against its potential for prejudice as it did with respect to appellant. The record, as to Reid, fails to show that the court engaged in this weighing process. (See *People* v. *Rollo, supra,* 20 Cal.3d at p. 117 [record raised doubts that court engaged in weighing process]; *People* v. *Rist, supra,* 16 Cal.3d at p. 223 [same]; cf. *People* v. *Green* (1980) 27 Cal.3d 1, 25 [164 Cal.Rptr. 1, 609 P.2d 468] [record must affirmatively show court exercised its discretion under Evidence Code section 352].) Moreover, had the court exercised its discretion under *Beagle* it would have had to exclude the prior conviction because it was for an offense which did not involve as a "necessary element an intent to deceive, defraud, lie, steal, etc., [which] impacts on the credibility of a witness." (*People* v. *Spearman* (1979) 25 Cal.3d 107, 115 [157 Cal.Rptr. 883, 599 P.2d 74]; *People* v. *Barrick* (1982) 33 Cal.3d 115, 123-124 [187 Cal.Rptr. 716, 654 P.2d 1243].)

We thus conclude that the trial court's ruling permitting evidence of Reid's prior murder conviction was error, either for a failure to exercise discretion (see *People* v. *Woodard, supra,* 23 Cal.3d at pp. 338-339; *People* v. *Rist, supra,* 16 Cal.3d at p. 223; cf. *People* v. *Green, supra,* 27 Cal.3d at p. 25) or, if discretion was exercised, for an abuse thereof (*People* v. *Woodard, supra,* at p. 340).

The remaining question is whether the error was prejudicial. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Defense counsel stated for the record that as a result of the court's ruling, he decided not to call Reid. However, no reason was given for the failure of appellant to testify. Appellant contends that because the court's error deprived him of a witness who might otherwise have presented relevant exculpatory evidence, the error must be deemed prejudicial. We disagree.

When, as the result of the trial court's erroneous *Beagle* ruling a defendant is deterred from testifying, the error is ordinarily deemed prejudicial. (*People* v. *Barrick, supra,* 33 Cal.3d at p. 130; *People* v. *Spearman, supra,* 25 Cal.3d at p. 119; *People* v. *Fries, supra,* 24 Cal.3d at pp. 223-224; *People* v. *Rist, supra,* 16 Cal.3d at p. 223.) This is because the reviewing court has no way of knowing what the defendant's testimony would have been and thus, has no basis for concluding whether such testimony would have affected the result. (*People* v. *Barrick, supra,* 33 Cal.3d at p. 130; *People* v. *Spearman, supra; People* v. *Fries, supra; People* v. *Rist, supra.*) " '[E]rrors at a trial that deprive a litigant of the opportunity to present his version of the case . . . are . . . ordinarily reversible, since there is no way of evaluating whether or not they affect the judgment.' [Citation.]" (*People* v. *Spearman, supra,* 25 Cal.3d at p. 119.) ▮ Conversely, when the defendant does testify and is erroneously impeached by evidence of his prior conviction, the reviewing court reviews the record to determine whether the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d at p. 836; *People* v. *Rollo, supra,* 20 Cal.3d at pp. 120-121.)

The same test of prejudice likewise applies when a nonparty witness testifies and is impeached as a result of *Beagle* error. (*People* v. *Woodard, supra,* 23 Cal.3d at p. 341.) We are unaware, however, of any case that has considered *Beagle* error which results in the failure of a nonparty witness to testify. While such error results in the nonparty's failure to testify, it does not prevent or deprive the defendant of the opportunity to present his testimony as to his version of the case. In the present case appellant had the opportunity to present his version to the trier of fact without fear of impeachment based on his prior felony conviction. The negative inferences which could be drawn from the failure of the defendant to testify (as outlined in *Barrick, supra,* 33 Cal.3d at pp. 129-130) do not exist when a nonparty fails to testify. The loss of the witness' testimony, therefore, does not have the same impact on the factfinding process as does the failure of the defendant to testify, nor does it invariably leave the reviewing court with no basis for concluding that the testimony would not have affected the result of the trial (see *People* v. *Spearman, supra,* 25 Cal.3d at p. 119 [defendant's failure to testify].) ▮ Accordingly, we conclude that when a defendant is deprived of the testimony of a nonparty witness as the result of the trial court's erroneous ruling on the witness' prior convictions, the *Watson* prejudicial error test is to be applied in determining whether the error is reversible.

In the present case the percipient witnesses were Deputy Stanley, appellant and Reid. As hereinbefore indicated, even though appellant's *Beagle* motion to exclude evidence of his prior conviction was granted, he failed

to testify. There is nothing in the record to suggest that Reid was in a different or better position to view the encounter between appellant and Deputy Stanley than was appellant himself, nor does appellant advance such an argument. Because appellant did not testify or otherwise present a defense, this is not a case where the court's ruling deprived the defendant of valuable corroborative evidence or of testimony that might be necessary to give a complete picture of events. (Cf. *People* v. *Fries, supra,* 24 Cal.3d at p. 228 [concerning defendant's testimony].) In these circumstances, when the defendant could have testified to his version of events but did not, and when no defense of any kind was presented, the court's error in ruling admissible a nonparty witness' prior conviction was not prejudicial. (Cal. Const., art. VI, § 13; *People* v. *Watson, supra,* 46 Cal.2d at p. 836.)

## II. *The evidence issue*

Appellant contends that the court erred in admitting evidence of his statement "[i]f that fucking pig wouldn't have pulled his gun, I would have done him in," as heard by the transportation deputy, Deputy Koford. Appellant's attack on the admission of this statement is two pronged. He first alleges that the statement is irrelevant and therefore its admission was error, and secondly that the court's apparent failure to weigh the prejudicial effect of the statement against its probative value was error. (*People* v. *Green, supra,* 27 Cal.3d at pp. 25-26.) We disagree.

### A. *Relevancy*

Relying on *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370] and *People* v. *Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372], appellant argues that the statement was not relevant to show any intent element of the offense. *Hood* and *Rocha* stand for the principle that assault with a deadly weapon (Pen. Code, § 245) is a general intent, not a specific intent, crime. The cases establish further that the requisite general intent is the intent to attempt to commit a battery, i.e., "the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." (*People* v. *Rocha, supra,* 3 Cal.3d at p. 899; *People* v. *Hood, supra,* 1 Cal.3d at p. 458.) ▇ Appellant's statement that he would have "done him [Deputy Stanley] in" was relevant evidence of his wilful intent to attempt to commit a battery on the officer. The statement thus was admissible under the admissions exception to the hearsay rule. (Evid. Code, § 1220; *People* v. *Lopez* (1980) 110 Cal.App.3d 1010, 1022 [168 Cal.Rptr. 378]; *People* v. *Panky* (1978) 82 Cal.App.3d 772, 776-777 [147 Cal.Rptr. 341].)

## B. *Evidence Code section 352*

Evidence Code section 352 permits the court in its discretion to exclude relevant evidence if its probative value is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice. (*People* v. *Quaintance* (1978) 86 Cal.App.3d 594, 599 [150 Cal.Rptr. 281].) In *People* v. *Green, supra,* the Supreme Court held that "on a motion invoking this ground the record must affirmatively show that the trial judge did in fact weigh prejudice against probative value . . . ." (*People* v. *Green, supra,* 27 Cal.3d at p. 25.)

Here, the record does not disclose that the trial judge undertook the weighing process required by *Green.* However, appellant's counsel did not move to exclude appellant's statement under Evidence Code section 352. In fact during the discussion between court and counsel, this code section was never invoked or referred to by counsel. The discussion regarding the admissibility of the statement took place before commencement of the trial, out of the jury's presence, as part of the *in limine* motions. During this hearing, when asked for an objection for the record, appellant's counsel argued the lack of relevancy as hereinbefore noted. The objection ended with the comment, "the statements . . . are prejudicial with no probative value." At no time did he ask the court, if it should find the evidence relevant, to weigh its probative value against its prejudicial effect. ■ In the absence of an objection based on Evidence Code section 352, or a specific request for the court to exercise the discretion granted it by that section, we hold that the trial court was not required "to make *sua sponte* an affirmative finding on the record to the effect that the probative value of the profferred evidence outweigh[ed] its prejudicial effect. A contrary interpretation of Evidence Code section 352, would amount to a requirement that trial judges make such affirmative findings upon every evidentiary ruling. Clearly the Legislature did not intend such an obviously onerous burden to be cast upon the trial judge." (*People* v. *Holt* (1972) 28 Cal.App.3d 343, 353 [104 Cal.Rptr. 572], disapproved on other grounds in *Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625, fn. 6 [114 Cal.Rptr. 121, 522 P.2d 681]; see *People* v. *Quaintance, supra,* 86 Cal.App.3d at p. 599 [record must affirmatively show that defendant asked the court to exercise its Evidence Code section 352 discretion]; cf. *People* v. *Leonard* (1983) 34 Cal.3d 183, 187-188 [193 Cal.Rptr. 171, 666 P.2d 28] [defense counsel explicitly argued that under section 352 court had to weigh probity against prejudice]; *People* v. *Green, supra,* 27 Cal.3d at p. 24 [defendant specifically invoked the court's discretion under section 352]; see generally, 1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 22.1, p. 590.)

### III. *Sufficiency of the evidence*

Appellant next contends that the evidence is insufficient to sustain a conviction of assaulting a peace officer because there was no evidence to show that Deputy Stanley was engaged in the lawful performance of his duties, as required by subdivision (b) of Penal Code section 245. (See *People* v. *Curtis* (1969) 70 Cal.2d 347, 354-355 [74 Cal.Rptr. 713, 450 P.2d 33]; *People* v. *White* (1980) 101 Cal.App.3d 161, 166-167 [161 Cal.Rptr. 541].) Appellant points to Stanley's testimony that he intended to cite appellant for jumping off the bridge, an offense the officer believed to be a violation of Vehicle Code section 21461.[2] ▇ Relying on *People* v. *Teresinski* (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753], appellant argues that because section 21461 applies only to drivers of cars and there was no evidence to show that his conduct was in violation of any other provision of law, Stanley's detention of him was unreasonable as a matter of law.

▇ To justify an investigative stop or detention, the officer must not only subjectively believe that the person he intends to stop or detain is involved in criminal activity, but his belief must be objectively reasonable: the specific and articulable facts known to the officer must be such as would cause any reasonable police officer in a like position to suspect the same criminal activity and the same involvement by the person in question. (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) ▇ The detention here was based on Stanley's knowledge that a posted sign prohibited jumping from the bridge and that appellant nevertheless had jumped. These facts provided an objectively reasonable basis for Stanley to suspect that appellant had engaged in criminal behavior. Stanley's mistake as to the provision of law appellant violated did not of itself render his suspicion unreasonable. As the court stated in *People* v. *Leyba* (1981) 29 Cal.3d 591, 599 [174 Cal.Rptr. 867, 629 P.2d 961]: " 'The reasonableness of a detention does not depend on the precise words which an officer on the stand chooses to describe his state of mind at the scene . . . .' [Citation.]" *People* v. *Teresinski, supra,* 30 Cal.3d 822, on which appellant relies, is inapposite. In *Teresinski* the facts known to the officer did not provide an objectively reasonable basis to believe that the defendant had violated the curfew ordinance on which the officer relied or any other provision of law. (*Id.,* at pp. 829-832.) Here, as indicated, Stanley's belief that appellant had

---

[2]Vehicle Code section 21461, subdivision (a), provides: "It shall be unlawful for any driver of a vehicle to fail to obey any sign or signal erected or maintained to indicate and carry out the provisions of this code or any local traffic ordinance or resolution adopted pursuant to a local traffic ordinance, or to fail to obey any device erected or maintained pursuant to Section 21352."

violated the law was reasonable.[3] His mistake as to the provision of law violated may have served as a defense to the alleged violation, but it was insufficient to render his actions outside the course of his duties when he was assaulted by appellant.

## IV. *Instructions*

Relying on *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913] and related cases, appellant contends that the court erred in refusing to instruct the jury in terms of CALJIC No. 9.58 (1980 rev.) to the effect that a peace officer is not engaged in the performance of his duties if he unlawfully detains a person. This contention is meritless. *People* v. *Sedeno* requires the court to instruct on the general principles of law relevant to the issues raised by the evidence (*id.*, at p. 715) and to instruct on particular defenses if it appears that the defendant is relying on such a defense. (*Id.*, at p. 716.) The jury here was instructed on the elements of the offense (CALJIC No. 9.50.5) and was instructed that a lawful detention requires reasonable cause (CALJIC No. 9.56). Because the terms of Vehicle Code section 21461 were not presented to the jury, there was no evidence that Officer Stanley's detention of appellant was unlawful, nor did defense counsel make such an argument. Indeed, defense counsel acknowledged that in the circumstances the requested instruction would be "meaningless."

The judgment is affirmed.

Caldecott, P. J., and Poché, J., concurred.

A petition for a rehearing was denied February 17, 1984, and appellant's petition for a hearing by the Supreme Court was denied April 4, 1984.

---

[3]We take judicial notice (Evid. Code, §§ 452, 459) of the fact that Vehicle Code section 21461.5 makes it unlawful "for any pedestrian to fail to obey any sign or signal erected or maintained to indicate or carry out the provisions of this code or any local traffic ordinance or resolution adopted pursuant to a local traffic ordinance, or to fail to obey any device erected or maintained pursuant to Section 21352."