[No. B018622. Second Dist., Div. Four. July 17, 1987.]

In re ARTHUR J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ARTHUR J., Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Dee Hayashi, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John R. Gorey and Tricia Ann Bigelow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WOODS, P. J.—Arthur J., a minor, appeals from the juvenile court order which declared him a ward of the court following denial of his motion to suppress evidence. We find that the evidence introduced against appellant was the fruit of an illegal arrest, and therefore reverse.

A juvenile court petition, filed on September 5, 1985, alleged that appellant should be made a ward of the court pursuant to Welfare and Institutions Code section 602 for possession of cocaine (Health & Saf. Code, § 11350) and possession of not more than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (b)). A separate petition, filed September 26, 1985, alleged that he had possessed a sawed-off shotgun and carried a loaded firearm on a different date. (Pen. Code, §§ 12020, subd. (a), 12031, subd. (a).) Appellant unsuccessfully moved to suppress evidence regarding the September 5 petition. Both petitions were found true, and he was placed home on probation. This appeal is limited to the legality of the arrest involved in the September 5 petition.

The evidence at the motion to suppress evidence was as follows: At 5:45 a.m. on June 16, 1985, Compton Police Officer Howard Coolidge observed appellant and one or two other persons standing in front of the security gate at the entrance of an apartment building complex. The officer concluded that appellant was in violation of Compton Municipal Code section 4500, the city's curfew ordinance. He believed the ordinance prohibited a minor from being in a public place between 10 p.m. and 6 a.m., unless he was with a parent or guardian or going to or from a specific place. Advising appellant that he was in violation of the curfew ordinance, Officer Coolidge placed him in handcuffs, and arrested him. The officer did not ask appellant what he was doing in front of the entry gate. Appellant stated at some point that he lived in the complex.

A search of appellant before he was placed in the patrol car uncovered two rocks of cocaine and a baggie of marijuana.

Appellant contends that his arrest was invalid because he was not in violation of Compton's curfew ordinance, which actually prohibits minors from loitering between 10 p.m. and 5 a.m. rather than 6 a.m. as Officer Coolidge believed. He further argues that no violation of the ordinance was shown because he was simply standing on the private property of the apartment complex in which he lived.

Respondent counters that (1) the officer's error regarding the time period of the curfew ordinance is not cognizable on appeal because appellant did

not object on that basis before the trial court, and (2) the officer's "minor mistake" regarding the time period is unimportant because he was acting in good faith.

Compton Municipal Code section 4500 provides in pertinent part: "It shall be unlawful for any person under the age of eighteen (18) years to loiter in or upon the public streets, highways, roads, alleys, sidewalks, avenues, parks, playgrounds or other public places or public buildings, places of amusement and eating places, or be on private property without the express or implied consent of the owner or persons having the care and control of such private property between the hours of *10:00 p.m. and 5:00 a.m.* of the date immediately following." (Italics added.) The section contains exclusions for a minor who is accompanied by an adult (subd. (a)); who is attending certain places of supervised activity (subd. (b)); who is "engaged in going to or returning from, in direct route," the places mentioned in subdivision (b) and home; or who is "going to or returning from work" and home (subd. (d)).

The actual text of the curfew ordinance was not in evidence at the suppression hearing. The officer simply stated on direct examination that the ordinance applied to a minor who was "in a public place between the hours of 10:00 at night and 6:00 in the morning and he's not in the presence of a parent or guardian and he's not in the process of going to or from a specific place—" On cross-examination, the officer indicated that he did not have a copy of the ordinance with him, could not repeat it verbatim, and did not know when it was enacted.

At the beginning of argument on the motion, defense counsel stated: "Your honor, even if we assume that the Compton Municipal Code is what this officer says it is, — which I don't know — I mean, my objection is that we don't even know what it says." He went on to argue that the arrest was invalid as the officer failed to ascertain whether appellant was violating the ordinance by asking him whether he was in the process of going to or from a specific place rather than just " 'hanging around.' "

■ Once the defense raises the question of the legality of an arrest and establishes the lack of a warrant, the burden shifts to the People to show justification. (*People* v. *Villalva* (1973) 33 Cal.App.3d 362, 366 [109 Cal.Rptr. 16]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

While there was no specific question or stipulation below regarding the absence of a warrant, it must be inferred from the officer's testimony that no warrant was obtained. The burden therefore was upon the People to show

that the arrest was valid. They attempted to do so by showing that the arrest was made pursuant to the curfew ordinance. The defense attacked that evidence by arguing that appellant's conduct did not violate the ordinance. ■ We view that argument as adequate to permit consideration of the language of the ordinance on appeal.

The People's reliance upon *In re Joe R.* (1980) 27 Cal.3d 496 [165 Cal.Rptr. 837, 612 P.2d 927], is misplaced. There, the police entered a suspect's mother's house, searched it, obtained a written consent from the mother before searching further, and then found incriminating evidence in a closet. The trial court found that the seizure was validated by the mother's voluntary consent to the search. Defense counsel argued for the first time on appeal that the police should have obtained an arrest warrant before entering the house, under *People* v. *Ramey* (1976) 16 Cal.3d 263 [127 Cal.Rptr. 629, 545 P.2d 1333]. The Supreme Court refused to consider that argument, since the People might have been able to show exigent circumstances to justify proceeding without a warrant if the warrant issue had been raised at the trial court level. (*In re Joe R., supra,* at p. 510.) In contrast, since appellant argued below that his conduct did not violate the curfew ordinance, there is no reason to believe the People could have presented any different evidence if the actual text of the ordinance had been placed before the trial court.

■ We therefore turn to the question of whether the fact appellant was arrested at 5:45 a.m. for violating curfew, although curfew had expired at 5 a.m., means that evidence which was the fruit of the arrest must be suppressed.

Respondent maintains that Officer Coolidge's mistake regarding the time period of the curfew ordinance is the kind of minor mistake which courts have overlooked in the past. He cites *United States* v. *Allen* (D.C. Cir. 1980) 629 F.2d 51, 53-54, which approved an arrest for drinking in a public place, despite later evidence that the area where the defendant was standing was covered by a liquor license, because the officer could not have reasonably known about the license; *Michigan* v. *DeFillippo* (1979) 443 U.S. 31 [61 L.Ed.2d 343, 99 S.Ct. 2627], which upheld an arrest made in good faith reliance upon a presumptively valid ordinance which was later held unconstitutional; *Hill* v. *California* (1971) 401 U.S. 797, 802-805 [28 L.Ed.2d 484, 488-491, 91 S.Ct. 1106], which held that when the police have probable cause to arrest one person, but arrest a second person in the reasonably mistaken belief that he is the first person, a search incident to the arrest of the second person is valid; and *People* v. *Smith* (1984) 151 Cal.App.3d 89, 98-99 [198 Cal.Rptr. 623], which held that an officer was engaged in the lawful performance of his duties when he had an objectively reasonable

belief that he had grounds for a detention, although he had a mistaken belief as to what provision of law applied.

Respondent's authorities are distinguishable, as they all involve *reasonable* mistakes. The facts here are much closer to those of *People* v. *Teresinski* (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753], which held that an officer's misinterpretation of a curfew law was not reasonable and could not be excused for strong public policy reasons.

In *Teresinski,* an officer observed an unfamiliar car proceeding through the city's business district at 2 a.m. The car was being driven at lawful speed and without any suspicious behavior. The officer stopped it because he believed the occupants to be minors who were violating the town's curfew ordinance, which forebade loitering by minors after 10 p.m. *Teresinski* found the detention illegal and suppressed evidence seized as a result of it[1] because the officer "lacked any objectively reasonable basis to suspect that defendant [the driver] or his passengers were violating the prohibitory language of the ordinance." (*Id.,* at pp. 830-831; fn. omitted.) The court found that the ordinance's prohibition against loitering could not reasonably include merely driving along a street in a lawful manner.

*Teresinski* expressly rejected the People's argument that the detention should be upheld on the basis of a reasonable mistake of law by the officer. It stated: "Courts on strong policy grounds have generally refused to excuse a police officer's mistake of law. [Citation.]" (30 Cal.3d at p. 831; fn. omitted.) The mistake there could not be termed reasonable, as the ordinance was neither obscure nor unfamiliar. "[T]he officer's belief that [the city] had enacted a blanket curfew ordinance should have been dispelled by a simple reading of the terms of the enactment." (*Id.,* at p. 832.) Moreover, the effect of a similar ordinance had been discussed in an appellate opinion several years earlier. To excuse the mistake "would provide a strong incentive to police officers to remain ignorant of the language of the laws that they enforce and of the teachings of judicial opinions whose principal function frequently is to construe such laws and to chart the proper limits of police conduct." (*Ibid.*) Similarly here, to approve the arrest based on the officer's erroneous belief in the time period covered by the curfew ordinance as well as its loitering requirement, would improperly encourage law enforcement officers not to learn the elements of the laws upon which arrests are based. Here, as in *Teresinski,* the officer's error could have been corrected by simply reading the ordinance.

---

[1] Physical evidence seized from the car was suppressed. Identification testimony by a robbery victim was held admissible because it rested on an independent and untainted source. (*People* v. *Teresinski, supra,* 30 Cal.3d at pp. 832-839.)

Respondent's sole discussion of *Teresinski* is the somewhat cavalier statement that *Teresinski's* validity "can no longer be presumed" because it was decided two years before the United States Supreme Court adopted a good faith exception to the exclusionary rule in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]. It is true, but not dispositive, that *Teresinski* refused to consider the impact of the fact that the officer there acted in good faith, as the United States Supreme Court had not endorsed a good faith exception at that time. (*People* v. *Teresinski, supra,* 30 Cal.3d at p. 831, fn. 6.) The Supreme Court's adoption of a good faith exception in *Leon* occurred in a limited context which is inapplicable to the facts of *Teresinski* or the case at bench.

*Leon* held that the Fourth Amendment did not require exclusion of evidence obtained by law enforcement officers who acted in reasonable reliance on a search warrant which was issued by a detached and neutral magistrate but was ultimately found to be unsupported by probable cause. (468 U.S. at pp. 900, 922 [82 L.Ed.2d at p. 698].) The court reasoned that the purpose of the exclusionary rule — to deter police misconduct and provide an incentive for law enforcement officers to act in accordance with the Fourth Amendment — was not served by excluding evidence obtained through reasonable reliance upon a magistrate's issuance of a warrant. (*Id.,* at pp. 918-921 [82 L.Ed. 2d at pp. 695-697].)

In contrast, the officers here and in *Teresinski* were not acting upon a warrant issued by somebody else, but upon their personal beliefs that they had probable cause to arrest or detain. The deterrence goal of the exclusionary rule obviously applies in this context.

We recognize that the trial court expressly found that Officer Coolidge acted in good faith. ■ However, *Leon* makes clear that an officer's conduct must be objectively reasonable and that subjective good faith does not justify utilization of its exception to the exclusionary rule. (*United States* v. *Leon, supra,* 468 U.S. at p. 919, fn. 20 [82 L.Ed.2d at pp. 696-697.) The objective standard "requires officers to have a reasonable knowledge of what the law prohibits." (*Ibid.*) ■ Officer Coolidge lacked such knowledge here.

Respondent cites cases extending *Leon* beyond the probable cause issue and into other areas where law enforcement officers conducted searches in reliance upon determinations made by magistrates. (*People* v. *Swan* (1986) 187 Cal.App.3d 1010, 1016-1019 [232 Cal.Rptr. 288] [improper authorization of nighttime service of search.warrant]; *People* v. *Barbarick* (1985) 168 Cal.App.3d 731, 735 [214 Cal.Rptr. 322] [improper condition requiring defendant to submit to search pursuant to an own-recognizance release].)

Respondent further relies upon pre-*Leon* cases which approved searches conducted pursuant to probation or parole conditions which later proved to be invalid. (*People* v. *Washington* (1982) 131 Cal.App.3d 434, 438-440 [186 Cal.Rptr. 3]; *People* v. *Tellez* (1982) 128 Cal.App.3d 876, 879-881 [180 Cal.Rptr. 579].)

An entirely different situation is presented where the officer acts solely upon his own mistaken belief that probable cause exists. One of our most cherished freedoms is the right to go about our lives without unjustified interference. We safeguard that right by requiring that the police know what the law is in order to arrest someone for a violation of it. We therefore decline to apply *Leon's* good faith exception to the facts before us, and reaffirm the validity of *Teresinski*.

Our conclusion that the arrest was illegal results in suppression of the evidence seized from appellant's person as a result of the arrest. (*People* v. *Teresinski, supra,* 30 Cal.3d at p. 832.) We need not and do not reach the contention that the arrest was also illegal because appellant was standing on the private property of the apartment complex in which he lived.

The order appealed from is reversed.

Kingsley, J., and Cole, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.