[Civ. No. 14833. First Dist., Div. Two. June 25, 1952.]

CLARK ALTMAN et al., Appellants, v. RICHARD PEIRANO et al., Respondents.

Dana, Bledsoe & Smith for Appellants.

Hoge, Pelton & Gunther and Reginald M. Watt for Respondents.

GOODELL, J.—On November 3, 1945, George Altman and Billie Welcher, 13-year-old boys, were killed when an automobile driven by respondent Richard Peirano struck the bicycle on which they were riding. Two actions were brought, one by appellant Clark Altman for the death of his son George, the other by appellant Marie Smith for the death of her son Billie. They were consolidated for trial and in each case the verdict was for the defendants for costs. New trials were denied and these appeals were taken.

The sole question presented for decision is whether there was prejudicial error in the rejection of an instruction tendered by the plaintiffs.

Highway 29 runs in a general northerly and southerly direction. About a half mile south of Napa a road known as Silverado Trail, the general direction of which is northeasterly and southwesterly, forms a junction at an angle of about 45 degrees with Highway 29 and ends there.

Highway 29 is a "through highway" as defined by section 82.5, Vehicle Code, and at its junction with Silverado Trail there is an arterial stop sign directed to traffic entering from Silverado Trail.

The collision occurred either immediately south of, or possibly within, this junction between 5:30 and 5:45 on a Saturday evening. George was operating the bicycle and Billie was riding on the handle bars. It was after sunset (which was at 5:09 or 5:10) about dusk, visibility was very poor, and some of the cars in the heavy stream of traffic had headlights lighted while others had not.

Highway 29 has a four-lane roadway which, northerly of the junction, is 48 feet wide while southerly thereof it is 57 feet wide. Northerly of the junction there is a 6-foot asphalt shoulder running along the westerly edge of the 48-foot roadway and a 6-foot sidewalk running parallel to the shoulder on *its* west. This sidewalk comes to an end at a point about opposite the center of the junction. Another sidewalk starts within or just below the junction but across the highway, on its east side, and runs southerly. The gap between the southerly end of one sidewalk and the northerly end of the other is about 50 feet.

The speed limit at the point of collision was 55 miles per hour and several defense witnesses, including respondent Richard Peirano, testified that he was traveling at about 45; one of the plaintiffs' witnesses, however, testified that he was going 70. The bicycle, traveling southerly at 6 or 7 miles per hour, was ahead of Peirano's car, traveling in the same direction, both vehicles in the inside or fast lane. Peirano testified that when he first saw the bicycle it loomed up "directly in front of me" at a distance of about 40 feet; that he applied the brake and swerved to the left to avoid running it down but, because of oncoming traffic, had to swerve back to the right. In one of these swerves, the bicycle was hit. The boys were thrown a long distance and died instantly.

The rejected instruction (No. 25) reads:

"I instruct you that if you find from the evidence that the bicycle was being operated from the shoulder of the road to and upon the main highway that the operator of said bicycle had the right-of-way over all vehicles upon the highway, if any, which were so far distant as not to constitute an immediate hazard at the time said bicycle entered upon the main traveled portion of the highway. In other words, if at the time a bicyclist enters upon the paved portion of the road an approaching vehicle is so close as to constitute a hazard, then said bicyclist must yield the right-of-way to said approaching motorist. On the other hand, if an approaching motorist is so far away that he does not constitute an immediate hazard to the operation of said bicycle upon and across the highway, then the bicyclist has the right-of-way and the motorist must yield the same to the bicyclist."

Appellants contend that the theory on which their actions were tried called for the instruction and that it was prejudicial error to refuse it. Respondents, without questioning the rule requiring instructions to be given on the theories of both sides, contend that there was no evidence whatever to support appellants' theory or require such instruction, and in their brief they challenged appellants to point out the testimony relied on.

Daniel Conley, who testified for the defense, was the only witness who saw the bicycle immediately before the crash. He testified that when he first saw the boys on the bicycle "They were coming off the Silverado Trail . . . headed out towards the middle of the highway" which means, of course, an entry from a *northeasterly* direction where there is a stop sign.

The claim of the plaintiffs was that the bicycle entered from the 6-foot shoulder (adjoining the paved roadway on the *west*) at or about the point where the westerly sidewalk ends, and that the purpose of the boys was to cross the highway from west to east and then proceed southerly on the easterly sidewalk.

The only testimony in the record (quoted by appellants in response to respondents' challenge) is that of appellant Clark Altman to the effect that he had always told his son that when bicycling southerly from Napa he should not use Silverado Trail but should first use the westerly sidewalk and then cross over where it ends at the junction and resume his southerly trip on the easterly sidewalk; also *that about 15 minutes before the crash* he had seen his son George with Billie at a service station on the *west* side of the highway about a half mile north of the junction. Respondents argue that such testimony does not tend to prove that the boys traveled on the westerly sidewalk instead of Silverado Trail on this particular occasion.

It is not necessary to decide whether or not this testimony supports appellants' theory, for if the tendered instruction was not a correct statement of the law it was properly refused, regardless of the theory on which it was tendered.

Appellants contend that "The law embodied in appellants' proposed instruction No. 25 properly outlined the rights and liabilities of persons who enter a through highway *at a point other than an intersection*" (emphasis ours, not appellants'). The last few words state the real point of appellants' whole argument.

" 'Intersection' is the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles *or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.*" (Veh. Code, § 86: emphasis added.) ·An instruction to that effect was given. Instructions were also given respecting the entering of a "through highway" (Veh. Code, §§ 82.5, 552).

If, as appellants argue, the bicycle entered the roadway a short distance south of the end of the westerly sidewalk opposite the Adobe Hut, it would appear probable that it entered *at the intersection itself*, rather than "at a point other than an intersection" (see *Ades* v. *Brush,* 66 Cal.App.2d 436, 446-448 [152 P.2d 519]).

However that may be, appellants argue that the refusal of the instruction "left the jury with the impression that unless the boys entered the highway from Silverado Trail they had no rights whatsoever." The only *rights* with which their instruction dealt were *rights of way,* and such rights are defined by statute.

In support of their contention that the instruction "correctly states the rights and liabilities of persons who enter a highway *at a point other than an intersection"* (emphasis added), appellants point to the construction which has been given to section 553, Vehicle Code, by such cases as *Shannon* v. *Thomas,* 57 Cal.App.2d 187, 196 [134 P.2d 522]; *McDougall* v. *Morrison,* 55 Cal.App.2d 92, 95-97 [130 P.2d 149], and *Jansen* v. *Sugiyama,* 29 Cal.App.2d 717 [85 P.2d 476], which they cite.

The chapter of the Vehicle Code covering the subject "Right of Way" is composed of six sections (550-555). Section 550 deals with "Vehicle Approaching or Entering Intersection"; section 551 with "Vehicle Turning Left at Intersection"; section 552 with "Vehicle Entering Through Highway"; section 554 with "Operation of Vehicles and Street Cars on Approach of Authorized Emergency Vehicles," and section 555 with "Equestrian Crossings."

Section 553 read at the time as follows: "The driver of a vehicle about to enter or cross a highway from an alley not exceeding a width of 16 feet, or any private road or driveway shall yield the right of way to all vehicles approaching on said highway."

None of the six sections goes so far as to prescribe the right of way of a person entering "a through highway at a point other than an intersection." Section 553 is limited in its terms. All three decisions cited by appellants (*Shannon* v. *Thomas, McDougall* v. *Morrison,* and *Jansen* v. *Sugiyama, supra*), are cases where the vehicle entered the highway from a private road or driveway, clearly within the terms of section 553. Moreover, every reported case under section 553, as far as our own research has disclosed, has dealt with that situation or with an alley. In other words, the authorities up to date have never attempted to broaden the scope of section 553 beyond alleys and private roads or driveways.

Section 82, Vehicle Code, defines a "Private road or driveway" as "a way or place in private ownership and used for vehicular travel by the owner and those having express or

implied permission from the owner but not by other members of the public.'' An alley needs no definition.

At the junction there was no alley or private road or driveway; there was no artery, roadway or opening of any kind into the highway on its westerly side. By statutory definition (Veh. Code, § 84) the sidewalk on which it is claimed the bicycle traveled was a portion of Highway 29. The shoulder from which the bicycle is claimed to have entered certainly was a portion of Highway 29, although not the roadway portion thereof (*Id.*, § 83).

In *McDougall* v. *Morrison,* 55 Cal.App.2d 92, 96, *supra,* relied on by appellants, plaintiff's car was entering El Camino Real from the driveway of his home when sideswiped by defendant's car traveling on the highway. Defendant contended on his appeal that he was entitled to the right of way as a matter of law under the language of section 553 (''shall yield the right of way to all vehicles approaching on said highway''), but the court said:

''The true rule is that, under the section of the Vehicle Code above quoted, it is made the duty of the driver of an automobile entering the highway from a private drive to look for approaching cars, and not to proceed if one is coming, unless, as a reasonably prudent and cautious person he believes, and has a right to believe, that he can pass in front of the other in safety. (*Wakefield* v. *Horn,* 109 Cal.App. 325 [293 P. 97]; see, also, *Conley* v. *Marvin,* 210 Cal. 330 [291 P. 830]; see cases collected 5 Am.Jur. p. 670, § 306; 24 A.L.R. 946.)''

*Shannon* v. *Thomas,* 57 Cal.App.2d 187, 196 [134 P.2d 522], where plaintiffs were entering (or had already entered) the highway from the driveway of a drive-in restaurant, is to the same effect, and so is *Jansen* v. *Sugiyama,* 29 Cal.App.2d 717, 720-721 [85 P.2d 476]. In the two last-cited cases the court points out that at the time of impact the car in question was not about to enter or cross a highway (§ 553) but had already progressed into the channel of traffic. Such apparently was the case here since at the time of impact both bicycle and automobile were in the same lane, the former ahead of the latter.

All three cases deal with situations within the terms of section 553. It would appear that instruction No. 25 was patterned on those cases, but since the entry here was not, under *any* theory of the case, from an alley or private road or driveway, the language of the instruction had no statutory foundation on which to rest. Appellants point to no provi-

sion of the Vehicle Code other than section 553, in support of their contention.

The instruction did not contain a correct statement of the law. Had it been given it would have laid before the jury a right of way rule which the Legislature has not seen fit to enact. It follows that it was properly refused.

Appellants contend that another instruction—one on contributory negligence of parents—emphasized and aggravated the failure to give No. 25. They do not claim that the giving of the other instruction was error. If, as we have held, the refusal of No. 25 was proper, there is no reason to discuss this additional point.

The judgments are affirmed.

Nourse, P. J., and Jones, J. pro tem., concurred.

A petition for a rehearing was denied July 25, 1952.