[Civ. No. 9779. Fourth Dist., Div. One. Aug. 28, 1970.]

LEROY D. PITCHER, Plaintiff and Respondent, v.
HERMAN KNISS et al., Defendants, Cross-complainants and Appellants;
CITY OF SAN DIEGO et al., Cross-defendants and Appellants.

**COUNSEL**

Welsh, Gibson & Legro and Louis M. Welsh for Defendants, Cross-complainants and Appellants.

John W. Witt, City Attorney, Stuart H. Swett, Deputy City Attorney, and T. Groezinger, Loton Wells, Edwin J. Dubiel & James J. Vonk, Steven Helfend and Donald M. Clark for Cross-defendants and Appellants.

Casey, McClenahan & Fraley and David S. Casey for Plaintiff and Respondent.

## OPINION

**WHELAN, J.**—Defendants Herman Kniss (Kniss), H. A. Lavezzi Company, Inc. (Lavezzi), and Cuchna Leasing Company, Inc. (Cuchna) appeal from a judgment in favor of Leroy D. Pitcher (plaintiff). City of San Diego (City), San Diego Employees Retirement System, and State Compensation Insurance Fund (Fund) appeal from the judgment denying reimbursement to City and Fund of benefits, medical cost and compensation, paid by City and Fund, City's compensation carrier, to and for plaintiff, an employee of City, injured in the course of his employment.

Plaintiff's action was to recover for personal injuries sustained when his police patrol vehicle, while maintaining radar traffic surveillance, was struck from behind by a vehicle owned by Cuchna and driven by Kniss in the course and within the scope of his employment with Lavezzi.

Kniss, Cuchna and Lavezzi cross-complained against City, alleging that City and Fund were precluded from being reimbursed for paid compensation and medical benefits because City was negligent in that City failed to provide plaintiff with safe working conditions and a safe place to work, and in negligently supervising and directing plaintiff, thereby contributing to his injuries. (See *Witt* v. *Jackson,* 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641].) City and Fund filed answers to the cross-complaint of defendants.

The jury returned a verdict in favor of plaintiff and returned special verdicts that City was concurrently negligent and thereby proximately caused the injuries.

After denial of their motions for new trial the defendants, City and Fund, separately appeal.

### STATEMENT OF FACTS

Plaintiff, a San Diego policeman since 1951, came on duty at about 10 p.m. on September 29, 1965. He was assigned a patrol car, which was equipped with radar. After inspecting the vehicle and radar equipment to insure it was in proper operating condition, he left the station and took up a general patrol in his assigned area. In his work as a police officer he had suffered injuries in several earlier traffic accidents.

Plaintiff then proceeded to southbound Interstate 5, a freeway, stopped on the shoulder of the road at the Pershing Drive overpass, and set up radar surveillance of freeway motorists. After having apprehended and cited one driver, plaintiff moved south from his first stopping place and stopped on a 10-foot-wide shoulder at a point approximately 500 feet south from the point at which the C Street onramp converged with the

freeway. The left side of his vehicle was 3½ to 4 feet off the traveled portion of the freeway. It was the usual practice of other officers to stop at that point for radar surveillance. Having stopped, plaintiff turned off all the lights on his vehicle, activated the radar equipment, and resumed surveillance. After he had been in that location for 5 to 10 minutes without incident he decided to move to another position and leaned forward to turn off the radar control; while he was in that posture his patrol car was struck from behind by a Falcon station wagon which Kniss was driving at a speed of 45 to 50 miles per hour, having come onto the freeway from the C Street onramp. It was then about midnight.

Kniss, a beer salesman, testified he had been drinking beer during the regular course of his business duties on September 29. He also admitted he had been served four drinks of vodka and tonic between 6 and 8 p.m. and said he had nothing thereafter. At 11 p.m. he left the Top Hat bar and proceeded to another bar to shoot pool. When Kniss left to go home he took the C Street onramp, intending to take Interstate 5 to eastbound Highway 94. He quickly realized the access to Highway 94 was farther north on Interstate 5 and behind him so he proceeded down the C Street onramp intending to take the first exit on his right.

Kniss knew there were four lanes for southbound traffic as well as a shoulder, claimed he did not intend to travel on the shoulder all the way to the next exit and wanted to get onto the traveled portion of the highway as quickly as he could, to pull out on the freeway as soon as reasonable. Kniss testified at that point he noticed a car approaching from his rear. He attempted to watch the car in his side mirror and to watch where he was going at the same time. While thus driving Kniss collided with the police vehicle.

Two police officers who came to the scene of the accident commenced a field sobriety test of defendant but gave it up because of his possible head injury.

The evidence regarding the accident and the scene is conflicting: Kniss testified the lighting was poor and that he first saw the police car when two car-lengths behind it and too close to avoid a collision. Eric Enell, a San Diego policeman, testified he arrived at the scene shortly after the collision, that the area was illuminated and that he had driven the C Street onramp on other occasions under similar lighting conditions and had been able to see the reflectors in the unlit tail-lights of a police patrol car parked where plaintiff's car was struck from a distance of about 250 feet.

During the trial defendants introduced a document entitled "Driver Education, N. L. Vaughn, Instructor." The document, which was used as

an outline guide by police instructors of new recruits, contained the following statement: "If parking at night, leave parking lights on." Vaughn testified the manual was in effect in late 1965; that it was intended to be used as a general outline and the general statements therein were not hard and fast rules to be followed without exception; that the section referring to parking was meant to apply to situations in which the officer would not remain in the vehicle, and that it was proper procedure to turn off the unit's lights when conducting radar surveillance. Another police officer was also of the opinion that the lights should be turned off when operating the radar. There was opinion evidence that the hazard of being struck by a drunken driver would be greater were plaintiff's car parked with the lights on.

Also introduced in evidence was the "American Radar Range Master," with which Pitcher testified he was not acquainted. That document contained the following statement: "The radar unit should not be used on sections of freeways and high speed zones where there are three or four traffic lanes in one direction during peak traffic periods. . . . Officers should concentrate their efforts in the lower speed zones for their enforcement." Plaintiff testified the area of the collision was a high accident zone and that 12 p.m. was not a peak traffic period. There is no evidence showing the "American Radar Range Master" was in effect in September 1965.

City paid plaintiff a total of $16,042.33 as salary and retirement pay to the time of trial. State Fund paid $12,811.48 in workmen's compensation benefits.

The jury returned a verdict in favor of plaintiff in the amount of $80,000; judgment was entered against Kniss and Lavezzi for $51,146.19 and against Cuchna for $10,000.

### CONTENTIONS ON APPEAL

A. Defendants raise the following contentions:

1. It was reversible error to instruct on Vehicle Code sections 530 and 24802 and on the doctrine of last clear chance.

2. Plaintiff was guilty of contributory negligence as a matter of law.

B. City and State Fund together contend:

1. The evidence was insufficient to support the jury's findings that City was negligent and thereby caused the injuries.

C. City separately contends the trial court committed reversible error in

refusing to give further instructions requested by the jury regarding City's negligence.

D. State Fund separately contends:

1. A finding that plaintiff was not negligent must result in a similar finding as to City.

2. As a matter of law City breached no duty of care owed to plaintiff.

### DEFENDANTS' CONTENTIONS

The trial court instructed the jury as follows: "Section 530 of the . . . Vehicle Code defines roadway as follows: A roadway is that portion of a highway improved, designed, or ordinarily used for vehicular traffic.

".  .  .  .  .  .  .  .  .  .  .  .

"Section 24802 of the . . . Vehicle Code provides as follows: Lamps on parked vehicle. No lights need be displayed upon a vehicle which is: (a) parked off the roadway."

It is contended those instructions were improper for two reasons: (a) Plaintiff was parked on the roadway as a matter of law. (b) Vehicle Code section 24802 does not apply to freeways (such as Interstate 5).

Defendants contend that as a matter of law every portion of the entire paved area of a freeway is a roadway within the meaning of section 530 of the Vehicle Code; that it is therefore impossible to park on a freeway off the roadway; that accordingly section 24802 Vehicle Code can have no application and a vehicle may never be parked on a freeway without displaying lights during those hours when vehicles in motion on a highway are required to display lights.

Vehicle Code section 332 defines a freeway as follows: " 'Freeway' is a highway in respect to which the owners of abutting lands have no right or easement of access to or from their abutting lands or in respect to which such owners have only limited or restricted right or easement of access."

While there are certain specific regulations made applicable to freeways and not to highways in general, there is none that forces a conclusion that Vehicle Code section 530, which applies to highways in general, is inapplicable to a freeway.

To hold otherwise, in the absence of a statutory regulation on the subject, would carry in its wake situations as inconsistent as defendants imagine to result from a holding that not every part of the paved area of a freeway is a roadway.

There are involved, among possible others, regulations as to when it is permissible to pass a vehicle on the right, if there are four lanes divided by white lines and one not so divided, and regulations as to keeping within a single traffic lane if there are more than three clearly marked lanes for traffic.

In the factual situation here involved it is evident that Kniss did not consider what he described as the shoulder as being a part of the roadway.

■ Whether the immediate section of paved surface on which plaintiff's car was standing was a part of the roadway remained a question of fact, as it did in *Fry* v. *Young,* 267 Cal.App.2d 340, 349 [73 Cal.Rptr. 62], *Wilson* v. *Foley,* 149 Cal.App.2d 726, 733-734 [309 P.2d 97], and *Altman* v. *Peirano,* 112 Cal.App.2d 8, 13 [245 P.2d 313]. It was proper to instruct on Vehicle Code sections 530 and 24802.

### INSTRUCTION ON LAST CLEAR CHANCE

■ The applicability of the doctrine of last clear chance does not depend upon an admission by the person against whom it is applied of the existence of the facts that call it into play.[1]

■ Nor need the existence of those facts have been established conclusively. The existence of the facts is itself a question of fact and may be inferred circumstantially. The sole question of law is whether there was sufficient evidence, direct or inferential, to submit the factual question to the jury. (*Desherow* v. *Rhodes,* 1 Cal.App.3d 733, 746-747 [82 Cal.Rptr. 138].)

Some of the evidence bearing on the question is that despite the hour the area was illuminated, the reflectors in unlighted tail-lights of a police vehicle parked at the same place and under similar lighting conditions as plaintiff's vehicle could be picked up in the low-beam head-lights of a vehicle coming down the C Street onramp at a distance of 250 feet; Kniss' 36 feet of skid marks leading up to the point of collision, his own conflicting statements that he had first seen plaintiff's vehicle a moment before the collision, that he never saw it before the accident, that he saw it a few

---

[1]Even here the instruction might be proper under the Restatement rule that the helpless plaintiff may recover if the defendant "is negligent in failing to utilize with reasonable care, and competence his then existing opportunity to avoid the harm, when he . . . would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise." (Rest.2d, Torts, § 479, p. 530.)

seconds before the accident when he was right on top of it, and that he first saw it when he was about two car-lengths away although he did not know the length of a car.

Kniss had spent the afternoon and evening in bars, the last of which he left after 11 p.m., and in which he had been spending time and money partly in the promotion of good will in his business as a beer salesman. He admitted having drunk one or more servings of beer and four drinks of vodka and tonic before 8 p.m. although he denied having had any alcoholic beverages thereafter; he had eaten last at about 5 p.m., when he had a sandwich; he had an odor of alcohol on his breath perceptible even to plaintiff in the latter's condition of shock; and he refused when requested by the police to give a blood sample for testing.

If Kniss had what to a person in full possession of his faculties could have been found to be a clear chance to avoid the collision with a stationary vehicle, but failed to do so because his reactions were so leadened that he failed to respond quickly enough to the otherwise clearly perceptible facts, the doctrine may nevertheless apply. ■ Where one person sees another in a position which is in fact dangerous, he may not rely on dullness to excuse him from not realizing the danger of the position; and if he sees the dangerous situation he must use reasonable diligence in analyzing the same, knowledge of danger being imputed where the circumstances are such as to convey to the mind of a reasonable man that the plaintiff is in a position of peril. (*Lappin* v. *Alameda-Contra Costa Transit Dist.*, 233 Cal.App.2d 634, 638 [43 Cal.Rptr. 785]; *Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 637 [255 P.2d 795].) "It was for the jury to determine whether the circumstances were such as would alert a reasonable man as to the danger of plaintiff's predicament and plaintiff's probable inability to escape therefrom." (*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 637 [255 P.2d 795].)

It might also have been inferred, despite Kniss' avowals to the contrary, that he had intended to travel along the shoulder to the next exit and that his attention in fact was not concentrated on entering the traveled traffic lanes.

■ An analysis, weighing and comparison of the circumstances in this case with those in reported decisions which have either approved or disapproved the giving of the instruction would merely proliferate "a wilderness of single instances." Accordingly, we do not compare the facts with the multitude of such cases, including the cases cited by counsel, which we have however read and studied. Under the circumstances it was not error to give the instruction on last clear chance.

## PLAINTIFF WAS NOT GUILTY OF CONTRIBUTORY NEGLIGENCE AS A MATTER OF LAW

■ To hold plaintiff guilty of contributory negligence as a matter of law would require that it was reasonably to have been foreseen that another motorist in the exercise of ordinary care would run into him. His negligence remains a question of fact when it depends upon whether it was reasonably foreseeable that some negligent action on the part of a third person would bring such third person into collision with plaintiff or would force a motorist otherwise exercising due care to run into him.

We think it was not reasonably foreseeable that an operator in the exercise of due care would have run into plaintiff's vehicle in the circumstances described.

## THE APPEAL OF CITY AND FUND

The special verdict finding that City was negligent is supported by substantial evidence which would also support a finding of negligence on the part of plaintiff, City's employee.

While Fund contends a finding that plaintiff was not negligent must result in a similar finding in favor of City, the general verdict in favor of plaintiff is not necessarily inconsistent with the special verdict finding City negligent.

That is so because the jury might have found plaintiff was negligent but might recover because it found also Kniss had the last clear chance to avoid the collision.

For reasons we will discuss we consider that such were the implied findings of the jury.

Disregarding the fact that the special verdicts do not purport to deal with the conduct of the plaintiff, they may still be reconciled with the general verdict, which, if possible, should be done (*Olsen* v. *Standard Oil Co.,* 188 Cal. 20 [204 P. 393]; *Law* v. *Northern Assur. Co.,* 165 Cal. 394 [132 P. 590]).

■ It is only if the special findings are such that if they are supported the general verdict could not stand upon any theory within the issues that there is an irreconcilable inconsistency. (*Lowen* v. *Finnila,* 15 Cal.2d 502 [102 P.2d 520]; *Law* v. *Northern Assur. Co., supra,* 165 Cal. 394; *Olsen* v. *Standard Oil Co., supra,* 188 Cal. 20.)

The jury was not asked to return a special verdict on the question whether Kniss had the last clear chance to avoid the collision. Only had such a

question been submitted and answered in the negative would there have been an irreconcilable conflict between the general and the special verdicts. We now discuss our reasons for saying so.

Under the evidence City might have been found guilty of negligence in knowingly permitting plaintiff to engage in the practice of parking without lights at night at the place where the collision occurred; or if it did not know of the practice, in failing to supervise his activities so as to have discovered such practice.

Although the negligence charged by defendants against City in the pleadings was for failure to comply with Labor Code sections 6400, 6401 and 6402, no instructions were proposed or given on those subjects.

If applicable at all, those sections could only have been violated by permitting plaintiff to be where he was under the conditions present when the collision occurred.

Those cases that have denied reimbursement of workmen's compensation paid by an employer who has violated sections 6400, 6401 or 6402 of the Labor Code in general are cases in which injury to an employee was caused by the dangerous or defective condition of premises, machinery or equipment negligently made, furnished or maintained by the employer or a third person.

City could not have been found negligent in directing plaintiff to do what he did, because there is no evidence of such direction from above. Plaintiff himself chose his position as he had earlier chosen another and was about to choose a third.

City could also have been negligent under the doctrine of *respondeat superior,* but such negligence would have had to be the negligence of plaintiff himself.

Whether based upon the doctrine of *respondeat superior,* which in this case would be upon the conduct of plaintiff, or upon City's permissive conduct with regard to a potentially dangerous practice, or in failing to discover such practice, City's negligence resulted in plaintiff's being where he was, under the conditions then present, when he was struck.

If City was negligent in respect to a matter which had that result, we think that plaintiff, unless under express direction to be there, also was negligent in being there.

In its results the negligence of City was of the same class as and quadrated with that of plaintiff in placing him or permitting him to be where he was under the existing conditions when the collision occurred.

It concurred with the negligence of Kniss only in the sense that its effects were still present when the collision occurred.

If, therefore, City was negligent, as a matter of law there would be no basis for saying plaintiff was free from negligence; and the verdict in his favor could, in logic, have been only because of the application of the last clear chance doctrine.

If, however, the negligence of City was only that which placed plaintiff or permitted him to be where he was and in the circumstances present at the time of the collision, City equally with plaintiff is entitled to the benefit of the doctrine of last clear chance.

The case that fathered the doctrine was one in which the plaintiff was not personally injured, nor personally in the position of danger, but was allowed recovery for damage to his property that he had placed in the highway where it was struck. (*Davies* v. *Mann,* 10 Mees & W 546, 152 Eng. Reprint 588.)

In *Witt* v. *Jackson, supra,* 57 Cal.2d 57, the case that declared the rule in California that the negligent employer may not recover the amount of workmen's compensation paid to an employee injured by the negligence of a third party and the employer's concurring negligence, the negligence imputed to the employer was that of a second employee which was of an active character in the operation of a moving vehicle that slowed down and changed lanes.[2]

Some foreign jurisdictions have gone so far as to allow indemnity to one whose negligence was in creating a condition that passively existed and upon which the active negligence of another caused injury to a third person. (*Austin Electric Ry. Co.* v. *Faust* (Tex.Civ.App.) 133 S.W. 449; *Colorado & S. Ry. Co.* v. *Western Light & Power Co.,* 73 Colo. 107 [214 P. 30].) In the last cited case the court said, at page 31: "[T]he collision which resulted in the death of the injured parties in the Hoyle case was primarily, solely, and proximately caused by acts of negligence of the railway company, positive, active, and subsequent in time to the merely passive, negative, and antecedent negligence of the power company, that the negligence of the wrongdoers was different in kind and the power company less culpable than the railway company, which had the last clear chance, but failed to avail itself thereof, to avoid the accident. . . ."

We shall not attempt to argue the question whether the effect of the

---

[2]It is not without significance that of a certain self-serving excluded portion of a statement made by the negligent employee the court said, at page 67: "[T]he excluded part may indirectly suggest that defendant may have had enough time to avoid the accident after the roof lights were turned on. . . ."

doctrine of last clear chance is to eliminate negligence of the plaintiff as a proximate cause of the injury. Dean Prosser's opinion is that the plaintiff's negligence remains as a proximate cause.[3] If that be so, there is again no inconsistency in the special verdict finding that City's negligence was a proximate cause of plaintiff's injury.

The judgment insofar as it denies reimbursement to City and Fund is reversed, with instructions to the trial court to enter judgment for the full amount of the verdict as against the defendants as limited in the case of Cuchna to the statutory liability, with appropriate provisions in favor of City and Fund. In all other respects the judgment is affirmed. The judgment so entered should bear interest from the date of the original judgment. Plaintiff, City and Fund shall recover their costs on appeal.

Brown (Gerald), P. J., and Ault, J., concurred.

A petition for a rehearing was denied September 21, 1970, and the petition of the defendants and appellants for a hearing by the Supreme Court was denied November 10, 1970. Peters, J., was of the opinion that the petition should be granted.

---

[3]Dean Prosser, in discussing the relationship of the last clear chance doctrine to proximate cause, says:

"No very satisfactory reason for the rule ever has been suggested. The first explanation given, and the one which still is most often stated, is that if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a 'proximate cause' of the result. While this coincides rather well with the attempt made in an older day to fix liability upon the 'last human wrongdoer,' it is quite out of line with modern ideas of proximate cause. In such a case the negligence of the plaintiff undoubtedly has been a cause, and a substantial and important one, of his own damage, and it cannot be said that injury through the defendant's negligence was not fully within the risk which the plaintiff has created." (Prosser on Torts (3d ed. 1964), ch. 12, § 65, Last Clear Chance, pp. 437-438.)

That appears to challenge the soundness of the view expressed by Professor Bohlen of the rationale of the last clear chance doctrine, as follows: "The disability of the plaintiff, whose negligence was the *final* decisive cause of his harm, to recover, is but an obvious application of the rule in Vicars v. Wilcocks to the facts of the case. Similarly the so-called Doctrine of the Last Clear Chance, whereby a defendant whose negligent act was the final decisive cause of the accident was liable to the plaintiff even though the latter had at an earlier stage been guilty of some default placing him within the reach of the effects of the defendant's act, is also a necessary result of that rule applied to such facts, and not, as it appears today, an anomalous exception based on the hardship which would result from the rigorous and logical application of the general principles of contributory negligence. In Davies v. Mann, cited as the earliest case of this sort, the only novelty is the extension to successive acts of mere omissive negligence of principles applied in Clay v. Wood to successive conscious and intended misconducts." (Selected Essays on the Law of Torts, *Contributory Negligence* [Harv. L. Rev. Assn. 1924], pp. 474-475.)