[No. D005258. Fourth Dist., Div. One. Dec. 18, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMA DINA LOPEZ, Defendant and Appellant.

COUNSEL

Susan Hildebrand, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Atttorney General, Jay M. Bloom and Deborah D. Factor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KREMER, P. J.**—Defendant Norma Lopez appeals her jury-tried conviction of possessing 14.25 grams or more of phencyclidine (PCP) for sale. (Health & Saf. Code, § 11378.5; Pen. Code, § 1203.07, subd. (a)(4).) Lopez claims unlawful search and seizure and violation of her constitutional right to due process. We find no due process violation. However, we find the challenged search and seizure were the product of an illegal detention. We thus reverse the judgment.

I

About 7:40 p.m. on October 15, 1985, Undercover Narcotics Officer Boyd and his partner saw Lopez and a companion sitting in a parked car in the parking lot of a public park in San Diego. The officers went up to Lopez's car. When Boyd saw an open beer can in Lopez's lap, he asked Lopez and her companion to get out of the car. After Lopez and her companion were outside the car, Boyd found a small jar containing liquid on the car's floor on the driver's side. After Boyd discovered the jar, Lopez said: "It's mine. I got it from a guy down the street. It's not water, it's gas." Boyd knew "water" was street terminology for PCP. He opened the jar,

smelled the liquid and confirmed his suspicions it was PCP. Boyd arrested Lopez.

Police chemists later weighed the liquid before analyzing it and determined its weight to be 14.75-grams. Their tests showed the liquid contained PCP. Some of the liquid was lost or destroyed due to the testing process and PCP's volatile nature. The remainder weighed less than 14.25 grams.

## II

The People charged Lopez with unlawfully possessing 14.25 grams or more of PCP for sale. (Health & Saf. Code, § 11378.5; Pen. Code, § 1203.07, subd. (a)(4).)

Lopez moved under Penal Code section 1538.5 to suppress the jar containing PCP and all police observations made during and after her detention, asserting they were the products of an unlawful search and seizure. The court denied Lopez's motion to suppress.

Lopez also brought an *in limine* motion to suppress all testimony about the weight of the seized PCP. The court denied Lopez's *in limine* motion.

After trial the jury convicted Lopez of possessing PCP for sale and found its weight was 14.25 grams or more. The court denied Lopez probation and sentenced her to prison for the three-year lower term. Lopez appeals.

## III

Lopez contends the court erred in denying her *in limine* motion to suppress all testimony about the weight of the PCP she was charged with possessing. Lopez asserts the People's failure to preserve the original quantity of PCP deprived her of the opportunity to verify its weight and present the verified evidence on her behalf and thus constituted a violation of her right to due process. We disagree.

Penal Code section 1203.07, subdivision (a)(4), prohibits probation for a defendant convicted of possessing for sale 14.25 grams or more of PCP. Thus, if the PCP seized from Lopez weighed less than 14.25 grams, probation was a possibility.

■ Due process requires the People disclose to a criminal defendant favorable evidence material to either guilt or punishment. (*California* v. *Trombetta* (1984) 467 U.S. 479, 480 [81 L.Ed.2d 413, 417, 104 S.Ct. 2528], citing *United States* v. *Agurs* (1976) 427 U.S. 97 [49 L.Ed.2d 342, 96 S.Ct. 2392]; *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194].) "[T]he appropriate test to apply in determining the materiality of nonpreserved [evidence] is the federal due process test set forth in *California* v. *Trombetta*." (*People* v. *Trombetta* (1985) 173 Cal.App.3d 1093, 1100 [219 Cal.Rptr. 637].) "There are just two key features to the standard devised in *California* v. *Trombetta*: (1) whether the evidence is material in the subjective sense, i.e., that it is exculpatory and was known to be so at the time it was lost, and (2) whether it can be replaced by other evidence, less satisfactory or not." (*People* v. *Gonzales* (1986) 179 Cal.App.3d 566, 572 [224 Cal.Rptr. 853].)

■ Lopez contends the exculpatory value of the weight of the seized PCP may have been apparent if the People had assured the PCP's availability for her independent weighing. However, such contention constitutes mere speculation unavailing under *California* v. *Trombetta, supra,* 467 U.S. 479. Manifestly, the PCP's weight did not "possess an exculpatory value that was apparent before the evidence was destroyed." (*Id.* at p. 489 [81 L.Ed.2d at p. 422].) On the contrary, the 14.75-gram weight was inculpatory. Thus Lopez has failed to satisfy the first prong of the materiality standard of *California* v. *Trombetta*.

Lopez also fails to meet the second prong of the materiality test of *California* v. *Trombetta*. In *California* v. *Trombetta, supra,* 467 U.S. at page 490 [81 L.Ed.2d at p. 423], the United States Supreme Court noted the defendant had alternative means to replace the lost evidence. Here two police chemists testified a portion of the PCP was lost not in a conscious effort to suppress exculpatory evidence but instead because of normal and necessary testing and storage procedures. Lopez unsuccessfully attempts to distinguish *California* v. *Trombetta* on the ground the tests there included two independent measurements while the PCP seized from her was weighed only once before analysis. However, as the trial court correctly noted, like the defendant in *California* v. *Trombetta,* Lopez had alternative means to challenge the accuracy of the testing methodology: "Well, clearly, according to your own witness, there is going to be, even under the best of circumstances, some, as [the witness] said, degradation, loss of the host material, the solution. So you have a reasonable concern, but the People have to—are faced with problems of preserving the evidence in any case as best they can, based upon the circumstances. . . .

"Since it's possible the machine could be off, I assume the scale, or whatever method they used for weighing [the PCP], you can subpena that. You can subpena [the witness's] notes. You didn't ask [the witness] when he was on the stand how he went through the process of weighing [the PCP]. I assume you will do that.

"And it is not unlike the *Trombetta* situation, where you contest the machine and the operator of the machine. There is no indication that [the witness] would have any reason to prevaricate.

". . . . . . . . . . . . . . . . . . . . .

". . . So if you have some reason to believe [the witness] committed error, then you can attack it on that basis. But - And it may be something that you'd like to place before the jury by way of argument, but certainly as a matter of law I don't think . . . you carried the burden of the motion. Denied."

The court properly denied Lopez's *in limine* motion to suppress testimony about the weight of the seized PCP.

## IV

Lopez contends the court erred in denying her motion under Penal Code section 1538.5 to suppress the seized PCP and the police officers' observations during and after her detention, asserting the initial detention was unjustified and the subsequent search was thus illegal. Police originally detained Lopez because they thought she was in violation of Vehicle Code section 23223 by having an opened beer can in her car. Lopez asserts section 23223 did not apply because she was in her parked car in a parking lot in a public park, not on a public street. We agree.

Vehicle Code section 360 defines "highway" as "a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street."

Vehicle Code section 463 provides: " 'Park or parking' shall mean the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading merchandise or passengers."

Vehicle Code section 23223 provides: "No person shall have in his or her possession on his or her person, while in a motor vehicle upon a highway, any bottle, can, or other receptacle, containing any alcoholic beverage which has been opened, or a seal broken, or the contents of which have been partially removed."

The issue is whether the parking lot of the public park where Lopez was detained was a "highway" for purposes of Vehicle Code sections 360 and 23223. We find the parking lot here was not a "highway."

In enacting Vehicle Code section 23223, the Legislature limited its application to vehicles on highways.[1] Section 360's definition of "highway" does not expressly include parking lots. The term "highway" has been been held to include parking places adjacent to a roadway (*Shachunazarian* v. *Widmer* (1958) 159 Cal.App.2d 180, 184 [323 P.2d 865]; *People* v. *Belanger* (1966) 243 Cal.App.2d 654, 657 [52 Cal.Rptr. 660]) and the asphalt shoulder adjoining a paved roadway (*Altman* v. *Peirano* (1952) 112 Cal.App.2d 8, 13 [245 P.2d 313]). However, unlike the areas those cases found to constitute parts of highways, the parking lot here was not a portion of an area intended primarily for travel but instead was an area primarily intended for parking. ■ Further, the words of a statute must be interpreted in accord with their usual, natural and ordinary meaning. (*49er Chevrolet* v. *New Motor Vehicle Bd.* (1978) 84 Cal.App.3d 84, 90 [148 Cal.Rptr. 236]; *Behling* v. *County of Los Angeles* (1956) 139 Cal.App.2d 684, 687 [294 P.2d 534].) ■ A parking lot separated from the street is manifestly different in nature from a road's shoulder. The fact a parking lot may include some areas available for driving does not make the parking lot a highway.

Other Vehicle Code provisions distinguish between highways and parking lots; distinctions which would be unnecessary surplusage if "highway" included "parking lot." Section 2805, subdivision (a), permits officers investi-

---

[1] Former Vehicle Code section 23122.5, added by Statutes 1979, chapter 363 (Assem. Bill No. 516), section 5, page 1228, was renumbered as section 23223 and amended to neutralize gender references by Statutes 1981, chapter 940, section 26, page 3569. The Legislative Counsel stated Assembly Bill No. 516 "would recast the provisions relating to possession of an open container of alcoholic beverage or consumption of alcohol in a vehicle *operated* upon a highway so as to distinguish (by setting forth in separate Vehicle Code sections) acts by the driver of a vehicle and acts by a passenger in a vehicle." (Italics added.) (Legis. Counsel's Dig., Assem. Bill No. 516, 4 Stats. 1979 (Reg. Sess.) Summary Dig., p. 100.) The Assembly Office of Research stated Assembly Bill No. 516 "adds a new vehicle code section to distinguish between violations by the driver and any passengers relating to possession of an open container of an alcoholic beverage or its consumption in a vehicle *operated* on the highways." (Italics added.) (Assem. Bill No. 516, Assem. Third Reading, Assem. Office of Research, (May 3, 1979) 2/cd/AFA-5-70.)

gating vehicle thefts to inspect vehicles in designated areas specifically including both highways and parking lots. Section 21107.8 refers to "privately owned and maintained offstreet parking facilities." Section 22507.8, prohibiting unauthorized parking in spaces designated for disabled persons, also specifically applies "to all offstreet parking facilities owned or operated by the state, and to all offstreet parking facilities owned or operated by a local authority. . . . [and] to any privately owned and maintained offstreet parking facility." Sections 22651 and 22654 concern the authority of peace officers to remove vehicles from highways and streets. Section 22651.3 deals with removal of vehicles from offstreet public parking facilities. Section 22652, authorizing removal of vehicles from spaces for the physically handicapped, contains specific provisions for privately and publicly owned or operated offstreet parking facilities.

Our conclusion the parking lot here is not a highway under Vehicle Code section 360 is buttressed by the language of Vehicle Code section 21113, subdivision (c).[2] Section 21113, subdivision (c), specifically provides Vehicle Code provisions relating to traffic are applicable to publicly controlled parking lots. This portion of section 21113, subdivision (c), would be unnecessary if Vehicle Code section 360's definition of "highway" included parking lots. We must presume the Legislature intended this portion of section 21113, subdivision (c), to have some meaning and perform some useful function. (*People* v. *Stansberry* (1966) 242 Cal.App.2d 199, 202 [51 Cal.Rptr. 403].) We infer enactment of this portion of section 21113, subdivision (c), was not an idle act.

Vehicle Code section 620 provides: "The term 'traffic' includes pedestrians, ridden animals, vehicles, street cars, and other conveyances, either singly or together, while using any highway *for purposes of travel*." (Italics added.) Vehicle Code section 21113, subdivision (c), makes applicable to *traffic* in public parking lots only those Vehicle Code provisions "relating to *traffic* upon the highways." (Italics added.) While a vehicle traveling through a public parking lot may be subject to Vehicle Code traffic provisions, section 21113, subdivision (c), does not make public parking lots subject to Vehicle Code regulation of conduct not involving travel.

The record contains no evidence Lopez had an open alcohol container in her possession in her vehicle while traveling in the public parking lot or

---

[2] Vehicle Code section 21113, subdivision (c), provides: "When any governing board, legislative body, or officer permits public traffic upon the driveways, paths, parking facilities, or grounds, under their control then, except for those conditions imposed or regulations enacted by the governing board, legislative body, or officer applicable to the traffic, all the provisions of this code relating to traffic upon the highways shall be applicable to the traffic upon the driveways, paths, parking facilities, or grounds."

elsewhere. When originally detained by police for possessing an opened can of beer, Lopez was using the public parking lot only for parking, not for traveling. Vehicle Code section 23223 does not apply where, as here, the public parking lot is being used only for parking.[3] Thus, the police detention of Lopez for possessing an opened beer can in her parked car in a public parking lot was not justified.

V

■ The People contend, even if Lopez's conduct did not violate any open container law, the detention should be upheld because the police actions were based upon a "reasonable mistake of law." The People assert the police reasonably interpreted Vehicle Code section 23223 as applying to public parking lots. We disagree.

"Courts on strong policy grounds have generally refused to excuse a police officer's mistake of law." (*People* v. *Teresinski* (1982) 30 Cal.3d 822, 831 [180 Cal.Rptr. 617, 640 P.2d 753].) The court in *Teresinski* stated that finding the officer's mistake of law reasonable under the circumstances "would provide a strong incentive to police officers to remain ignorant of the language of the laws that they enforce and of the teachings of judicial opinions whose principal function frequently is to construe such laws and to chart the proper limits of police conduct." (*Id*. at p. 832.) The court did not reach the issue whether an officer's reasonable mistake of law under exceptional circumstances might validate police conduct because the mistake of the officer in the case could not be found to be reasonable. (*Id*. at pp. 831-832.) In *In re Arthur J.* (1987) 193 Cal.App.3d 781, 787 [238 Cal.Rptr. 523], the court found the officer did not have reasonable knowledge of what the law prohibited. The court stated *United States* v. *Leon* (1984) 468 U.S. 897, 919, footnote 20 [82 L.Ed.2d 677, 696, 104 S.Ct. 3405], "makes clear that an officer's conduct must be objectively reasonable and that subjective good faith does not justify utilization of its exception to the exclusionary rule." (*Ibid*.) Similarly, we find any mistake of law by the police here was not objectively reasonable. Vehicle Code section 23223 is not an obscure or unfamiliar statute. The statute's plain language prohibits possession of an opened alcoholic beverage container in a vehicle on a highway. The word "highway" is not a technically difficult term. The usual, natural, and ordinary meaning of "highway" does not include "public parking lot." Further,

---

[3] We note San Diego Municipal Code section 56.54, subdivision (b), prohibits consumption of any alcoholic beverage or possession of an opened container of alcoholic beverage in specified public parks and public parking lots. Section 56.54 does not include the park where Lopez was detained.

this case presents no exceptional circumstances where an officer's reasonable mistake of law might perhaps validate police conduct.

The court should have granted Lopez's motion under Penal Code section 1538.5 to suppress the seized PCP and the police observations resulting from the illegal detention. (*In re Arthur J., supra,* 193 Cal.App.3d at p. 788.)

### DISPOSITION

The judgment is reversed.

Todd, J., and Benke, J., concurred.