Filed 5/2/16  P. v Hendrickson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C076597 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF131344) |
| v. | |
| DENEICE COLLETTE HENDRICKSON, | |
| Defendant and Appellant. | |

Sentenced to three years' formal probation following a plea agreement, defendant Deneice Collette Hendrickson appeals from the trial court's denial of her motion to suppress evidence.  (Pen. Code, § 1538.5.)  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

According to the report prepared by the sheriff's office, a sheriff's deputy conducted a traffic stop on the vehicle driven by defendant at approximately 2:46 a.m. on March 31, 2013.  Because she had bloodshot, watery eyes, appeared extremely nervous,

1

could not sit still, and moved her hands around the vehicle even after being asked not to, the deputy asked defendant to step out of the vehicle for field sobriety tests. Defendant said she had consumed a 24-ounce can of beer and two shot glasses of vodka at approximately 11:00 p.m. on March 30. She later said she had snorted a line of cocaine around 1:00 a.m. on March 31. Based on this information and defendant's poor performance on the field sobriety tests, the deputy concluded defendant was under the influence of a central nervous system stimulant and could not safely operate her vehicle. Asked if there was anything illegal on her person or inside the vehicle, defendant said there was a methamphetamine smoking pipe and methamphetamine in her purse on the front passenger seat. The deputy found two clear bags in the purse which contained a total of 4.47 grams of methamphetamine. A blood test done after defendant's arrest was positive for methamphetamine and marijuana.

After a preliminary hearing, an information was filed charging defendant with transportation of methamphetamine (count 1; Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine (count 2; Health & Saf. Code, § 11377, subd. (a)), misdemeanor possession of drug paraphernalia (count 3; Health & Saf. Code, former § 11364.1), misdemeanor use of methamphetamine (count 4; Health & Saf. Code, § 11550, subd. (a)), misdemeanor driving under the influence of alcohol or drugs with a prior conviction of that offense (count 5; Veh. Code, § 23152, subd. (a)),[1] and misdemeanor "wet reckless" driving (count 6; §§ 23103, 23103.5). As to count 5, the information alleged defendant had a prior Vehicle Code section 23103 conviction within 10 years of the current offense.

Defendant thereafter filed a motion to suppress evidence, alleging that she was unlawfully detained without probable cause or reasonable suspicion of illegal behavior,

---

[1] Undesignated statutory references are to the Vehicle Code.

2

and that neither the initial encounter with law enforcement nor the subsequent search was consensual. The motion alleged the following additional facts taken from the preliminary hearing:

Defendant was detained in the parking lot of the Pilot Travel Center in Dunnigan, California (hereafter "the Pilot"), a private property which includes a gas station. The sheriff's deputy first noticed defendant driving her car from a parking stall on the property. He stopped her for not having a functioning right headlight. She had not left the property and was never seen by the deputy driving on a public road or highway.

The motion asserted that the traffic stop was unlawful because section 24400, on which the deputy relied to make the stop, prohibits driving with a nonoperable headlight *only* on a public road or highway.[2] It does not apply on private property. (See *People v. Lopez* (1987) 197 Cal.App.3d 93, 98-101 (*Lopez*) [unlawful to detain a person for possessing open beer can in vehicle while parked in a parking lot because Vehicle Code provision barring open beer can in vehicle applied only "upon a highway"].) Thus, even assuming defendant was driving in the parking lot with a nonoperable headlight, she had not committed a traffic violation.

In opposition, the People argued that although defendant was not in violation of section 24400 while driving in the parking lot, the deputy could reasonably detain her there to keep her from driving onto the highway while operating a vehicle in an unsafe

---

[2]    Section 24400, part of Division 12 of the Vehicle Code, provides in part that a motor vehicle "shall be operated during darkness, or inclement weather, or both, with at least two lighted headlamps." Section 24001, which begins Division 12, provides: "This division . . . applies to all vehicles . . . when upon the highways." Section 360 provides: " 'Highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel. Highway includes street."

condition.[3] (*People v. Ellis* (1993) 14 Cal.App.4th 1198, 1202 (*Ellis*).) The deputy could reasonably presume that defendant, having pulled out of a parking stall, was heading toward an exit leading to Interstate 5 or Highway 99, where her car would not have been safely visible to other vehicles on a dark, rainy night. The deputy was not required to wait for that danger to occur before making a traffic stop.

At the hearing on defendant's motion, Yolo County Sheriff's Deputy Charles Hoyt testified as follows:

In the early morning of March 31, 2013, Deputy Hoyt was on routine patrol in a fully marked patrol car at the Pilot. It had been raining "on and off" the whole evening. It was dark, and the roads were very wet.

The Pilot is the largest gas station area for interstate travel along the north end of Yolo County; it is routinely frequented by semi-truck drivers and other motorists. It is located off County Road 8, which crosses County Road 99W, then connects to northbound and southbound Interstate 5. The distance on County Road 8 to the Interstate 5 connection is less than a half-mile, possibly less than a quarter-mile.

County Road 8 has one westbound and one eastbound lane, and a turning lane at the approach to County Road 99W. Lighting on County Road 8 "varies"; although there is a signaled traffic intersection at County Road 99W, the lighting is much better in the area of the Pilot parking lot.

Around 2:46 a.m., Deputy Hoyt saw a sedan exiting a parking stall at the front of the Pilot. The sedan had a nonfunctioning headlight on the right side; the left headlight was fully on. Deputy Hoyt had not seen the sedan pull into the Pilot and had not observed anything about it before he noticed the headlight problem.

---

**3** The People made a separate argument that the deputy had probable cause to search defendant's purse. Defendant did not subsequently contest that point.

4

Deputy Hoyt, whose patrol car was to the west of the sedan, saw the sedan proceed eastbound.[4] There are three direct exits from the parking lot, all leading to County Road 8. The car was heading toward an exit; if it had taken a slight left turn and gone forward a short distance, it would have been able to merge onto County Road 8. However, it was still going straight forward.

When Deputy Hoyt observed the nonfunctioning headlight, he initiated a traffic stop on the sedan, out of concern for the safety of the vehicle's occupants and of other drivers "based on the road and weather conditions."[5] Deputy Hoyt also thought that if the driver was not aware of the problem, after learning of it he or she could buy light bulbs or lighting equipment at the Pilot before proceeding.

After Deputy Hoyt activated his lights to perform the traffic stop, the other car continued slowly forward until it came to a halt in another parking stall. He then contacted the driver (defendant).

Bruce Hendrickson, defendant's husband, testified as follows:

He was not with defendant at the Pilot on March 31, 2013. Approximately one week after his wife's arrest, he drove from their home in Happy Camp and picked up her 2003 Mercury Grand Marquis sedan at the Pilot lot, where it had been parked since the arrest.

The vehicle had a lighting control module problem that periodically caused the automatic circuit breaker system to go out, cutting off both headlights. When this malfunction occurred, the driver could perform a temporary fix by manually pulling the

---

[4] The trial court asked how Deputy Hoyt could see defendant's headlights from where his car was. He explained that as defendant's car backed out of its stall and proceeded eastward he could see illumination from the car's left headlight shining onto parked vehicles in the area, but could not see any illumination from the right headlight.

[5] Deputy Hoyt acknowledged that his report cited violation of section 24400 as the reason for the stop, but testified that he pulled defendant over "due to the headlight out."

5

light switch handle, which would keep the lights on until the circuit breaker reset itself. Once the car was parked, the circuit breaker might reset and the lights might come back on after 10 minutes, or it might take a couple of hours. This malfunction never caused only one headlight to go out or allowed only one light to come on at a time.

Hendrickson had never had to replace a headlight. He always checked the headlights before starting to drive. He could see whether they were on or off when he drove. It was "physically impossible" for one light to go off or burn out while the other continued to function; if that had ever happened, he would have had to replace the lamp.

Defendant testified as follows:

She drove to visit her grandchildren several times a month and always stopped for gas at the Pilot; it had the cheapest gas in the state. In the early hours of March 31, 2013, she pulled in to get gas, then felt a little tired. She saw that there was a rest stop at least 20 miles away, but was not sure she could make it. After getting gas, she parked in front of the store, went in, and asked the manager if she could rest at the Pilot for a couple of hours. He gave her permission to park and rest in the parking lot at an area where it said, "stopped."

Defendant got back in her car, backed out, and proceeded to the area designated by the store manager. She did not see any lights or police presence behind her because she had too much "stuff" in her back window. She did not stop because the deputy detained her. She stopped because she had pulled over to park where she was told to park, then started to get out to let her dog out of the car. She did not notice the deputy until he was beside her door.

When defendant pulled out of the stall, she had to use the "back button" that turns the headlights on and off. That day was the first time she had experienced the problem with the lights. She had just found out from a Mercury dealer in Oakland earlier in the day that "holding the button forward" would keep her lights on. She needed to rest because her arm had become tired from holding the button forward. But she did put her

6

lights on when she backed out and moved, even though the immediate area was very well lit, to make sure she was seen.

The deputy told defendant he had stopped her because one of her headlights was out, but she told him that was not possible–either they were both on or both off. She used stimulants four or five hours before the stop, but she was not feeling the effects when she spoke to the deputy; she was coherent and not tired or sleepy, but her "arm was just tired of holding the switch forward" all the way from Oakland.

After hearing argument, the trial court ruled:

"Okay. Well, we have the testimony of Mr. Hendrickson regarding the conditions of the lights and how to solve the problems of the light[s] of the Grand Marquis, which I can assure I won't be purchasing any time soon, nor will anyone else here.

"The problem with it is this. The officer made an assessment based on his observation that the light was out because there wasn't any reflection coming off of the car as the defendant's vehicle was backing up and then trying to proceed forward.

"My recollection of the diagram [drawn by Deputy Hoyt on the stand] was that he put on his lights to get her to turn over at a point in time when she was still in a position going from the store possibly to one of the exits to get out onto . . . County Road 8. And it seems to me that his duty as a police officer, his obligation is to provide safety to the public.

"The condition of the roadway--this is in the early morning hours. It was dark. It had been rainy at that time, off and on. And apparently he felt her headlight was out. He made the observations that he testified to, and he did what I think is a reasonable thing to do, and that is to stop a person, alert them [to] the fact that their headlight was out.

"I think that's a reasonable proposition, even if we're on private property. She was within not too many feet of getting onto a public roadway, and a public roadway that had fairly quick access, as he described it. Not much yardage between the exit from that

area where the store was located onto a . . . roadway that led very much to a major artery here in California; I-5 north.

"And I think it was reasonable for him to have done that based on the observations. We have his observations versus the speculation as to what the lighting could have been like given this Mercury Grand . . . Marquis.

"I do find that the reasonable basis was established. I do find that, even so, there was a good-faith belief that that headlight was out and that it was a reasonable thing to do for him as an officer and protecting the public. And I don't see anything beyond that . . . that he was doing. And I think he had a reasonable basis for this stop, and I'm going to deny the motion to suppress the evidence."

Defendant thereafter pleaded no contest to counts 2 and 6, with all other charges dismissed, and received three years of formal probation.

DISCUSSION

Defendant contends the trial court erred by denying her suppression motion because the police had no authority to detain her on private property without reasonable suspicion that she had committed, was committing, or was about to commit an offense. We disagree. *Ellis, supra*, 14 Cal.App.4th 1198, cited by the People below but unmentioned in defendant's opening brief, is on point and dispositive.

On review of a ruling denying a motion to suppress evidence, we view the facts most favorably to the respondent and uphold the trial court's factual findings if supported by substantial evidence. (*People v. Woods* (1999) 21 Cal.4th 668, 673; *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408.) However, we decide independently whether the search or seizure was reasonable under the Fourteenth Amendment. (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

Here, substantial evidence supports the trial court's finding that Deputy Hoyt observed a nonoperating headlight on defendant's car and stopped her for that reason. So far as defendant asserts the court did not make that finding, she is wrong.

8

Defendant asserts, citing to the reporter's transcript, "The court allowed that the officer may have been mistaken that [defendant's] headlight was not functioning, but concluded he acted on a good-faith belief it was non-functional." We do not read the court's remarks that way. Before mentioning the officer's "good-faith belief that that headlight was out," the court juxtaposed the officer's "observations," particularly his observation that "there wasn't any reflection coming off [the right side of] the car," to "the speculation as to what the lighting could have been like given this Mercury Grand . . . Marquis." By finding the defense story was based only on "speculation," the court impliedly found the officer's observations were credible evidence about the state of defendant's headlights at the time of the detention and defendant's contrary claim was not credible. We may not reweigh that finding.[6]

So far as defendant asserts Deputy Hoyt could not lawfully stop her in the parking lot for a nonoperational headlight because section 24400 does not apply in parking lots, *Ellis, supra*, 14 Cal.App.4th 1198, disposes of that contention.

In *Ellis*, an officer stopped the defendant as he was driving in a commercial parking lot with his headlamps off. Determining that the defendant was under the influence of alcohol, the officer arrested him. His blood-alcohol level proved to be 0.24 percent. (*Ellis, supra*, 14 Cal.App.4th at p. 1200.) The defendant moved to suppress the evidence of his intoxication, arguing, as here, that section 24400 could not be enforced in a private parking lot. (*Ibid.*) The trial court denied the motion. (*Id.* at p. 1201.)

The appellate court affirmed. Even if the defendant could not be cited for violating the Vehicle Code provision while driving in the parking lot, the officer was

---

**6** And if we could, we would reach the same conclusion as the trial court. Even if defendant's car had a problem which sometimes caused both headlights to go out, that fact would not render it "physically impossible," as defendant and her husband asserted, for a single headlight to go out for some other reason.

entitled to stop him "to remind him to turn on his headamps . . . . Stopping appellant was the most effective means to assure that he would turn on his lights before driving on the street. . . . In view of the potential harm to the public if appellant drove on a public street without headlamps on, [the officer]'s detention of appellant was reasonable. [¶] . . . [¶] Officer Hart was not required to wait until appellant actually drove upon a public street to stop appellant. . . . Had Hart waited for appellant to drive on a public street, and had a traffic collision occurred, Hart would have been subject to justifiable criticism. While Hart could not, perhaps, legally cite appellant in the parking lot, appellant's driving without his headlamps on was activity 'relating' to a violation of section 24400 and it was 'about to occur' on a public street.[7] The suppression motion was properly denied." (*Ellis, supra*, 14 Cal.App.4th at pp. 1201-1202, fn. omitted.)

Here, though defendant testified she was merely heading to another parking stall with the permission of the Pilot store manager, she did not produce the manager as a witness or corroborate her story in any other way. She also claimed she had too much "stuff" in her back window to see the police behind her, while she was headed to that other parking stall and not onto the street. In any event, when Deputy Hoyt saw defendant apparently driving toward the exit with a nonfunctioning headlight, it would not have been reasonable, as the trial court concluded, for him to hang back because he may not have known for sure where she was going. He was entitled to presume she was heading out of the parking lot onto the road, since that is what drivers usually intend to do when they head toward the exits of parking lots. He was not required to wait until she actually got on the road and committed a citable violation of section 24400. As in *Ellis*, a proper concern for public safety required Deputy Hoyt to stop defendant as soon as he observed her driving with a nonoperating headlight.

---

**7** See *People v. Aldridge* (1984) 35 Cal.3d 473, at page 478, from which the language quoted in *Ellis* derives.

10

*Lopez, supra*, 197 Cal.App.3d 93, on which defendant relies, is inapposite.  There, as noted above, a person sitting in her car in a parking lot with an opened beer can in the car was found to have been improperly detained because the statute prohibiting the possession of opened beer cans in cars applies only on the highway.  (*Id.* at pp. 98-101.)  But here, defendant was not sitting in the parking lot when detained; she was driving and apparently about to enter a public road.  Thus, the undisputed fact that the Pilot parking lot was not a highway or publicly owned is immaterial.

So far as defendant asserts that any part of the trial court's reasoning was incorrect, we need not address that contention any further than we have already done.  We review the trial court's ruling, not its reasoning.  (*Ellis, supra,* 14 Cal.App.4th at p. 1201.)

DISPOSITION

The order denying defendant's motion to suppress evidence is affirmed.


                                                    NICHOLSON          , Acting P. J.



We concur:



      BUTZ            , J.



      HOCH            , J.


11